**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, New York 10019
Charles E. Simpson, Esq.
Jeffrey C. Hoffman, Esq.
Tel: (212-237-1000
Email: csimpson@windelsmarx.com
        jhoffman@windelsmarx.com

*Attorneys for Parmjit Singh Parmar and the
Parmar Entities*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x

| In re: | Chapter 11 Case |
|---|---|
| ORION HEALTHCORP, INC. | No. 18-71748 (AST) |
| CONSTELLATION HEALTHCARE TECHNOLOGIES, INC. | No. 18-71749 (AST) |
| NEMS ACQUISITION, LLC | No. 18-71750 (AST) |
| NORTHEAST MEDICAL SOLUTIONS, LLC | No. 18-71751 (AST) |
| NEMS WEST VIRGINIA, LLC | No. 18-71752 (AST) |
| PHYSICIANS PRACTICE PLUS, LL | No. 18-71753 (AST) |
| PHYSICIANS PRACTICE PLUS HOLDINGS, LLC | No. 18-71754 (AST) |
| MEDICAL BILLING SERVICES, INC. | No. 18-71755 (AST) |
| RAND MEDICAL BILLING, INC. | No. 18-71756 (AST) |
| RMI PHYSICIANS SERVICES CORPORATION | No. 18-71757 (AST) |
| WESTERN SKIES PRACTICE MANAGEMENT, INC. | No. 18-75758 (AST) |
| INTEGRATED PHYSICIAN SOLUTIONS, INC. | No. 18-75759 (AST) |
| NYNM ACQUISITION, LLC | No. 18-75760 (AST) |
| NORTHSTAR FHA, LLC | No. 18-75761 (AST) |
| NORTHSTAR FIRST HEALTH, LLC | No. 18-75762 (AST) |
| VACHETTE BUSINESS SERVICES, LTD. | No. 18-75763 (AST) |
| MDRX MEDICAL BILLING, LLC | No. 18-75764 (AST) |
| VEGA MEDICAL PROFESSIONALS, LLC | No. 18-75765 (AST) |
| ALLEGIANCE CONSULTING ASSOCIATES, LLC | No. 18-75766 (AST) |
| ALLEGIANCE BILLING & CONSULTING, LLC | No. 18-75767 (AST) |
| PHOENIX HEALTH, LLC | No. 18-71789 (AST) |
| NEW YORK NETWORK MANAGEMENT, LLC | No. 18-74545 (AST) |
| Debtors. | (Jointly Administered) |

--------------------------------------------------------------------------------x

-------------------------------------------------------------------------------x
Orion Healthcorp, Inc., *et al.,*

                                        Plaintiffs,

           v.

Parmjit Singh Parmar (a/k/a Paul Parmar), Sotirios          Adv. Pro No. 18-08053 (AST)
Zaharis, Ravi Chivukula, Pavan Bakshi, Naya Constellation
Health LLC, Alpha Cepheus, LLC, Constellation Health
Investment, LLC, Constellation Health Group, LLC,
Constellation Health, LLC, First United Health, LLC, Taira no
Kiyomori LLC, Blue Mountain Healthcare, LLC, CC Capital
CHT Holdco LLC, CHT Holdco LLC, PBPP Partners LLC, Axis
Medical Services, LLC, Vega Advanced Care LLC, Pulsar
Advance Care LLC, Lexington Landmark Services LLC,
MYMSMD LLC, PPSR Partners, LLC, AAKB Investments
Limited, Destra Targeted Income Unit Investment Trust, on
 behalf of unitholders, a Delaware Statutory Trust, United States
of America, Aquila Alpha LLC, 2 River Terrace Apartment 12J,
LLC, Dioskouroi Kastor Polydeuces, LLC, 21B One Riiver Park
LLC, Aquila Alshain LLC , Ranga Bhoomi LLC, Harmohan
Parmar (a/k/a Harry Parmar), Kiran Sharma, The Red Fronted
Macaw Trust, Young Conaway Stargatt & Taylor, LLP (in its
capacity as Escrow Agent), Blue Cross Blue Shield of South
Carolina, Honorable Trinidad Navarro, Insurance Commissioner
of the State of Delaware, in his capacity as Receiver, and John
Does 1 through 100 inclusive,

                                        Defendants.
-------------------------------------------------------------------------------x
-------------------------------------------------------------------------------x

Parmjit Singh Parmar, First United Health, LLC, and
Constellation Health, LLC,

                                   Cross-claim Plaintiffs,

           v.

CC Capital CHT Holdco LLC and CHT Holdco LLC,

                                   Cross-claim Defendants.
-------------------------------------------------------------------------------x

## RESPONSE IN OPPOSITION TO MOTION
## TO DISMISS CROSS-CLAIMS

Defendants and Cross-claimants, Parmjit "Paul" Parmar ("Parmar"), First United Health, LLC ("FUH") and Constellation Health LLC ("CHLLC"), by and through their attorneys, Windels Marx Lane & Mittendorf, LLP, respectfully submit this Response in Opposition to the "Motion to Dismiss Cross-claims" filed by CC Capital CHT Holdco LLC ("CC Capital") and CHT Holdco, LLC ("CHT Holdco") (CC Capital and CHT Holdco will sometimes be jointly referred to herein as "CC Capital").

### The Cross-Claims

As this Court is aware, the Cross-claims asserted herein by Parmar, FUH and CHLLC are based upon the claims asserted by the Plaintiffs, Orion Healthcorp, Inc. ("Orion"), *et al.*, in their First Amended Adversary Proceeding Complaint (the "Adversary Complaint") against Parmar and the Parmar Entities, including FUH and CHLLC, alleging that Parmar and the Parmar Entities committed fraudulent acts in the "go-private" transaction of Constellation Healthcare Technologies, Inc. ("CHT") and its subsidiaries, including Orion.

### Omissions

However, like numerous historians who chronicle World War II from the War in Europe without reference to the war with Japan in the Pacific Theatre, which triggered the United States entry into World War II, the facts and allegations contained in the Adversary Complaint omit the overwhelming evidence that the fraud alleged to have been committed by Parmar and the Parmar Entities was actually perpetrated by CC Capital and CHT Holdco as the instrumentalities of an individual named Chinh Chu.

While CC Capital and CHT Holdco, both of which are controlled by Chinh Chu, are named as two (2) of the Defendants in the Adversary Proceedings; which by itself is remarkable as CC Capital and CHT Holdco are the controlling shareholders of CHT and Orion, there are no allegations in the Adversary Complaint which detail the insider trading, obstruction of justice and fraud that they and Chinh Chu committed against the public shareholders of CHT, including Parmar and the Parmar Entities; all of which has been outlined in the Cross-claims against them asserted by Parmar, FUH and CHLLC and in the Motion to Dismiss the claims against Parmar and others in the action commenced against them by the U.S. Securities and Exchange Commission (the "SEC") in the U.S. District Court for the District of New Jersey (Docket No.: 18-CV-9284-MCA-MAH).

The omissions in the Adversary Complaint are particularly relevant as, without consideration by this Court of the allegations asserted in the Cross-claims by Parmar, FUH and CHLLC, Chinh Chu will succeed in his endeavor to (i) acquire CHT's assets for less than one-tenth of their stated value; (ii) place the blame on Parmar for actions taken by Chinh Chu and CC Capital which resulted, in the possible losses sustained by CHT and the other Plaintiffs; and (iii) in the final analysis, the use of this Bankruptcy Court by Chinh Chu to obtain CHT's assets for a pittance and recover substantially, if not all, of the funds invested in CHT by CC Capital's investors and the loan to CHT Holdco made by Bank of America Merrill Lynch ("B of A") in the "go-private" transaction.

### The Motion

In their Memorandum of Law in support of the Motion to Dismiss, CC Capital gives four (4) grounds upon which they assert that this Bankruptcy Court should dismiss the Cross-claims. They are as follows:

1.    The Cross-claims are precluded by the Releases executed by Parmar, FUH and CHLLC;

2.    The Cross-claims do not satisfy pleading requirements under the Federal Rules of Civil Procedure ("FRCP") and fail to state a claim under 12(b)(6) of the FRCP;

3.    The Cross-claims do not adequately state a claim for fraud; and,

4.    Parmar, FUH and CHLLC lack standing under 12(b)(1) of the FRCP.

In this Adversary Proceeding before this Bankruptcy Court, CC Capital's above assertions lack merit, for the following reasons.

## ARGUMENT

**A.    The Releases**

CC Capital, through its declarant, Douglas B. Newton, submits three (3) Voting and Support Agreements and Release of Claims (the "Releases"), each dated as of November 24, 2016, the eve of the "go private" transaction, by and between FUH, CHT, CHT Holdco, CHLLC and Parmar, respectively.  CC Capital's position is that "any claims asserted by Parmar, First United and CHLLC are barred, and thus, fail to state a claim under the Releases… ."  They cite a portion of paragraph 4(d)(i) of the Releases, "(i) Release of Claims", as support for their meritless position.  However, if one reads further down in that paragraph, in particular the exception to "Released Matters" contained in paragraph 4(d)(i)(3), you will vote the following exception:

> "…except that the Released Matters do not include, and nothing in this Release shall affect or be construed as a waiver or release by Releasing Parties of, any of the Potential Claims by any Releasing Parties arising from or relating to…(3) rights of exculpation… ." (Emphasis added.)

"Exculpate" is derived from two (2) Latin words: *ex-*, meaning "from" and *culpa*, meaning "blame". It is similar in meaning to exonerate, and when a person is exonerated, he is cleared of an accusation and any suspicion that goes along with it. Therefore, the above provision from the Releases clearly gives Parmar, FUH and CHLLC the right to seek <u>exculpation</u> from the blame that Chinh Chu seeks to utilize CC Capital and CHT to place on them. Thus, paragraph 4(d)(i)(3) clearly permits Parmar, FUH and CHLLC's assertion of the Cross-claims to "exculpate" themselves from blame for the following acts and results contained in allegations in the Adversary Complaint:

> **(i)     Plaintiffs in the Adversary Proceeding are the "victims of a large, complex and brazen fraud...perpetrated by their former management" led by Parmar and "subject to a brazen concealment effort."**

The fact is that from February 16, 2016, Chinh Chu, CC Capital and CHT Holdco received and reviewed public data, audited financial statements for the years 2013, 2014 and 2015 (copies of which are annexed hereto as Exhibit "A"), as well as a consolidated spreadsheet, a copy of which is annexed hereto as Exhibit "B". Furthermore, as part of CC Capital's bid for CHT, Chinh Chu demanded that Parmar contribute $10 million in cash and the equity of CHT owned by entities he controlled or managed as part of the bid. Parmar disclosed his participation in the bid to the Board of Directors of CHT, recused himself from all bid evaluation discussions and the decision making process. The CHT Board then formed an independent committee (the "Independent Committee") to evaluate all bids and hired Duff & Phelps Corp. ("D&P") to perform an independent evaluation and write a fairness opinion as required by 17 CFR §229.1014. On August 17, 2016,

D&P submitted their initial report to the Independent Committee, a copy of which is annexed hereto as Exhibit "C". Subsequently the Independent Committee retained Sun Trust Robinson Humphrey ("Sun Trust") to produce a valuation, as well as the law firms Kirkland & Ellis and McGuire Woods. A copy of the Sun Trust engagement letter, dated September 14, 2016 is annexed hereto as Exhibit "D". Also, CHT provided complete and accurate data to CC Capital and its Advisor, KPMG, such as:

(a)  payroll records on every one of its subsidiaries, except the "empty shells";

(b)  lease documents and other information on the physical office of every subsidiary, except the empty shells, and

(c)  tax returns and other tax filings on every subsidiary of CHT and Orion except the empty shells.

Thus, with the submission of the above documents and other materials as required and reviewed by D&P, Sun trust, KPMG (on behalf of Chinh Chu and CC Capital) Stifel Bank and to a limited extent, Kirkland & Ellis and McGuire Woods, Parmar, FUH and CHLLC have the right under the Release to seek exculpation and exoneration from claims of concealment, especially when the "brazen fraud" was committed by CC Capital and Chinh Chu against Parmar and the Parmar Entities, including FUH and CHLLC, as part of an elaborate plan to steal all of the assets of CHT.

(ii)  **Parmar controlled CHT through his position as CEO and Chairman of the Board of CHT.**

The truth is that, through CC Capital, Chinh Chu controlled CHT and orchestrated all of the acts alleged to have been made by Parmar. Chinh Chu accomplished this feat

through Parmar's recusal of himself from all bid evaluations by the Independent Committee and Chinh Chu's undercover financial inducements to Mark Feuer, John Johnston, and Dr. Shawn Zimberg, members of the Independent Committee, to do his bidding as evidenced by their adoption of the terms proposed by Chinh Chu for the "go shop" period to ensure that no other prospective buyer of CHT could outbid him. One example of Chinh Chu's and CC Captial's control is the rejection of the bid of Flexpoint Ford, LLC, a copy of which is annexed hereto as Exhibit "E", based upon a valuation of CHT of $365 million.

Additionally, Chinh Chu hired Truc To, the KPMG partner in charge of the due diligence process, as CHT's CFO over the objection of Parmar, CHT's CEO, and with a compensation package larger than any CFO of a comparably sized company to CHT and significantly larger than that of Parmar, the CEO, and with stock options on top of the salary. Chinh Chu, through CC Capital, then forced Parmar's "resignation" on September 29, 2017 by an announcement at a Board meeting although Parmar never really resigned! Chinh Chu then retained Eric Edel, a former Fund manager, as the replacement CEO for CHT. Chinh Chu also demanded that Parmar give him all of Parmar's and the Parmar Entities interests in CHT, plus a payment of several million dollars, or he and his counsel, John Altorelli, would have Parmar arrested. Obviously, Parmar did not control CHT. Chinh Chu did!!! And, he continues to control CHT today.

### (iii)    The Parmar Shareholder Redemption Payments were stolen from the Debtors and constitute property of the Debtors' estate.

Again, this statement lacks merit. The shares in CHT held by Parmar and the Parmar Entities, respectively, had been held by them from the time CHT went public on

the London Stock Exchange Alternative Investments Market.   Parmar and the Parmar

Entities owned approximately sixty-eight (68%) percent of the outstanding CHT shares

following the London AIM "go public" transaction.  Approximately twenty-two (22%)

percent of CHT's outstanding shares at that time was owned by the public.  The claims of

CHT and Orion to the Parmar Shareholder Redemption Payments lack substance.  Even

were CHT and Orion to succeed in placing the blame on Parmar and the Parmar Entities

for any losses they incurred by pledging their assets as collateral to their guaranty of

repayment of the loan from Bank of America, they would have a claim for damages, they

would not have ownership of the Parmar and Parmar Entities' shares as those shares in

CHT were acquired by Parmar and the Parmar Entities in the "go public" transaction and

were purchased with private funds having nothing to do with CHT.  The shares were

acquired from CHT as part of its public sale and CHT, Orion nor any of the other

Plaintiffs have a claim against these shares.

In addition to the above, further reference is made to an additional exception

contained in paragraph 5(a) of the Release referring to a Stockholder's, as that term is

defined in the Release, "Authority" and which provides in pertinent part as follows:

> "This Agreement has been duly authorized, executed and
> delivered by the Stockholder and constitutes a valid and binding
> obligation of the Stockholder enforceable in accordance with its
> terms, except as enforcement may be limited by applicable
> bankruptcy, insolvency, reorganization, moratorium or similar law
> affecting creditors' rights generally and by general principles of
> equity (regardless of whether considered in a proceeding in equity
> or at law)."  (Emphasis added.)

Clearly, the above provision permits Parmar, FUH and CHLLC' assertions of the Cross-

claims.  Each is a creditor of CHT and Orion.  Each is a shareholder of CHT through their

affiliate Alpha Cepheus.  And, each of Parmar, FUH and CHLLC have suffered the same

damages as a result of the same acts of Chinh Chu, CC Capital and CHT Holdco as has

CHT and Orion. In fact, the Complaint in the within Adversary Proceedings should have

listed Parmar and the Parmar Entities as Plaintiffs along with CHT and Orion versus CC

Capital and CHT Holdco, as Defendants, as they were each damaged by the same acts of

CC Capital and CHT Holdco as CHT and Orion.

While the Bankruptcy Court, as an Article 1 court, does not have the equitable powers of

the Chancellor, the Bankruptcy Court does employ and operate on equitable principles. Thus for

the Bankruptcy Court to enforce the Release to eliminate a creditor's right to defend himself

from a claim wrongly asserted against him by exculpation or exoneration would violate "general

rules of equity (regardless of whether considered as a proceeding in equity or law)."

As a result of the above, the Releases do not preclude Parmar, FUH or CHLLC from

asserting the Cross-claims against CC Capital and CHT Holdco. The Releases also do not

preclude Parmar, FUH or CHCCC from disclosing to this Bankruptcy Court the facts of the bad

faith and fraudulent Chapter 11 Bankruptcy filing by Orion, CHT and most of their subsidiaries

in the U.S. Bankruptcy Court for the Eastern District of New York at the direction of CC Capital

and Chinh Chu, in order to prevent the release of approximately $10 million escrowed and

subject to seizure by the Internal Revenue Service and approximately $55 million escrowed by

order of the Delaware Chancery Court and subject to a seizure warrant by the U.S. Department

of Justice ("DOJ") without further order of the Delaware Chancery Court. (It should be noted

that CHT's counsel in this Bankruptcy Court is DLA Piper ("DLA"), the same law firm that

represented Destra Targeted Income Unit Investment Trust ("Destra"), one of the above

Defendants, in the Chancery Court and which was arguing that the funds should remain

escrowed in Delaware and not be released to DOJ, while their current clients, CC Capital and

CHT argued, that the funds should be released to DOJ. The first of many conflicts of interest in this Chapter 11 case!)

Also, the Releases do not preclude Parmar, FUH and CHLLC from disclosing the further elements of the fraudulent Chapter 11 filing by DLA who, by the way, had been introduced to Chinh Chu and CC Capital by John Altorelli, a former Dewey LeBoeuf and DLA partner. Certain of the fraudulent elements of the Chapter 11 filings of CHT and Orion, and those of their subsidiaries who also filed, are as follows:

a.     The Chapter 11 Petitions were filed in the Eastern District of New York, which has minimal jurisdiction, if any, as Orion and its subsidiaries overwhelmingly listed New Jersey as their principal place of business.

b.     The Orion Schedules list Winston & Strawn LP, one of Chinh Chu's attorneys, as the largest unsecured creditor with a claim of approximately $3 million, although Winston & Strawn provided no legal services to CHT but had just received a payment of $2,555,023.91 at the "go private" transaction. This fake claim allowed Winston & Strawn to be placed on and become Chair of the Unsecured Creditors' Committee. But for the fact that DLA represents CHT, Winston & Strawn's claim in this Chapter 11 case would be challenged and, as part of its Chapter 11 case, CHT would seek to "clawback" the $2,555,023.91 payment for lack of consideration, as well as the $575,000.00 paid at the "go private" transaction closing to Altorelli, who was at the time and remains so today, Chinh Chu's legal counsel.

c.     The failure of the Schedules to list Parmar and the Parmar Entities, including FUH and CHLLC, as creditors with claims of approximately $130

million due to them pursuant to consulting agreements and the "go private"

transaction.  Had their claims been listed, at a minimum, a Parmar entity would

have been a member of the Unsecured Creditors' Committee and able to neutralize

Chinh Chu's control of it through Winston & Strawn.

    d.    The use and control of this Chapter 11 filing by Chinh Chu also extended

to his plan to steal all of the assets of CHT through the orchestration of two (2)

sham auctions of CHT's assets in the Bankruptcy Court. The assets were

auctioned off in two (2) prongs: First, there was the sale of all pre-merger assets

to Medical Transcription Billing Corp. ("MTBC") as the "Stalking Horse" bidder

for the auction with an opening bid of $10 million based on a non-binding letter

of intent issued by MTBC on April 10, 2018. MTBC, a public company whose

public filings reflect operating net losses for every single year of its operation, is

believed to have been financed in this acquisition by Chinh Chu, CC Capital or

other entities related to Chinh Chu as part of Chinh Chu's plan to acquire the pre-

merger assets at a price significantly below their value. Also, to conceal their

involvement in the MTBC bid, CC Capital coordinated competing bids by TG

Capital, LLC for $11 million and HealthTek Solutions, LLC ("HealthTek") for

$11.5 million.[1] Upon information and belief, HealthTek and TG Capital, LLC are

related entities controlled by Chinh Chu.

    Second, with the majority of CHT's assets now sold to MTBC, the

only remaining valuable assets was the post-"go private" acquisition of the

assets of New York Network Management, LLC ("NYNM"). On July 5, 2018,

---

[1] HealthTek originally submitted a bid for all of CHT's assets for approximately $27 million; however, after discussions with DLA, HealthTek elected to bifurcate its bid. This is all the more remarkable as CHT rejected offers from GSS Infotech, LTD ($245.5 million) and Flexpoint Ford, LLC (based upon a $365 million valuation).

CHT filed a motion in the Bankruptcy Court to sell NYNM to HealthTek as their "Stalking Horse" bidder at an initial bid of $16.5 million. Important to note is that HealthTek's bid was received by CHT on June 19, 2018, the same day that HealthTek was incorporated. And, upon information and belief, HealthTek and TG Capital were represented by the same law firm in this Chapter 11 case and it is believed CC Capital, or another entity under Chinh Chu's control, provided funding to HealthTek for the purpose of purchasing the NYNM assets at $16.5 million. (Even more remarkable is that following the "go private" transaction closing, CHT acquired NYNM for $25 million with a $22 million initial payment to NYNM's principal, Elizabeth Kelly.)

Thus, through the use of controlled professionals, controlled bidding entities (all of which were controlled by Chinh Chu and CC Capital) and extraordinarily short deadlines in the bidding procedures to ensure that no higher or better offers could be advanced, CHT received no non-CC Capital/Chinh Chu controlled bids except for GSS Infotech bid of $245.5 million for the assets sold at the two(2) Bankruptcy Court auctions for $28.9 million, which, after the payment of fees to counsel, advisors and Bank of America, the DIP Lender, leaves nothing to pay to CHT's creditors whereas the GSS proposal and the Flexpoint Ford offers would have resulted in full payment to all creditors, while significantly reducing costs.

There are many other fraudulent elements to this Chapter 11 filing that the Bankruptcy Court applying equitable principals will be presented with on Parmar, FUH, and CHLLC's Cross-claim; none of which are barred from disclosure by them under the Releases.

**B.** **The Cross-claims Satisfy Pleading Requirements under the**
**F.R.C.P. and State Claims Under Rule 12(b)(6) F.R.C.P.**

CC Capital and CHT Holdco, in reliance on Rules 8(a)(2), 8(d) and 10(b) of the FRCP

assert that the Cross-claims do not meet the "Pleading Requirements" established by the

aforesaid Rules. These Rules require the following:

a.     "…a claim for relief must contain… a short plain statement of the claim

showing that the pleader is entitled to the relief's FRCP 8(a)(2).

b.     "Each allegation must be simple, concise and direct." FRCP 8(d).

c.     "A party must state its claims or defenses in numbered paragraphs, each

limited as far as practicable to a single set of circumstances…" FRCP 10(b).

d.     Where a pleading fails to meet the above requirements, it can be dismissed

for failure to state a claim upon which relief can be operated.

Parmar, FUH and CHLLC have fully complied with the above requirements. First, with

respect to paragraph a. above, the Cross-claims against CC Capital provide at paragraphs 201-

203 the "short plain statement of the claim required by FRCP. Second, each of the allegations in

paragraphs 201-203 are "simple, concise and direct," especially paragraph 203 which provides

that "Parmar and the Parmar Entities who are shareholders in CHT, have suffered immense

damages by CC-CHT's pattern of illegal activity…", thus satisfying the requirements of FRCP

8(d). Third, the Cross-claims are stated in "numbered paragraphs" and each allegation, "as far as

practicable" is limited "to a single set of circumstances", as required by FRCP 10(b).

In positing the above claims, which are assumedly based on CC Capital's belief that the

pleadings in the Cross-claim are so vague and/or ambiguous that a more definite statement is

required for them to prepare a response, reference to FRCP 12(e) and a Motion for a More

Definite Statement appears to be a more appropriate response than a Motion to Dismiss. In a

Motion for a More Definite Statement, CC Capital "must posit the defects complained of and the details desired", and this Court could order a more definite statement within a time period of fourteen (14) days or such time as the Court sets.

The second portion of CC Capital's objection, is that the Cross-claims "fail to State a Claim" under FRCP 12(b)(6). However, CC Capital and Chinh Chu fail to recognize that the Cross-claims are an extension of the Complaint in that the Adversary Complaint alleges that certain actions by Parmar and the Parmar Entities, including FUH and CHLLC, have resulted in damages to CHT and Orion. Parmar and the Parmar Entities, including FUH and CHLLC, have denied those allegations but asserted claims that the offenders and the fraudulent acts complained of were committed by CC Capital and Chinh Chu in the same manner and chronology as the Adversary Complaint but correcting the allegations by citing to the acts of CC Capital and Chinh Chu attributed to Parmar. Separating the factual and legal elements of Parmar, FUH and CHLLC's claims and acceptance of the well pleaded facts as true, with all reasonable inferences in Parmar's, FUH's and CHLLC's favor, the allegations in the Cross-claim show "more than a sheer possibility that…[CC Capital and Chinh Chu] has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 s. et. 1937, 173 L.Ed 268 (2009). The allegations in the Cross-claim are facially plausible as there is sufficient factual content to at a minimum draw a "reasonable inference that… [CC Capital and Chinh Chu] is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Thus, Parmar and the Parmar Entities, including FUH and CHLLC, have stated a claim upon which relief can be granted.

## C.    The Cross-claims Adequately State a Claim for Fraud

FRCP 9(b), cited by CC Capital, requires that "[i]n alleging fraud…a party must state with particularity the circumstances constituting fraud… Malice, intent, knowledge, and other

conditions of a person's mind may be alleged generally." In the instant case, the "circumstances constituting fraud" by CC Capital and Chinh Chu are stated not only "with particularity" but with specificity. Chinh Chu's intent in utilizing CC Capital to defraud the Plaintiffs in the "go private" transaction is spelled out with references to his "Malice, intent [and] knowledge". The allegations in the Cross-claims set forth Chinh Chu's steps taken to obtain the acceptance of his bid proposal from his leverage exercised over Parmar to his corruption of members of the Independent Committee to approve his bid for CHT. Every interaction with Chinh Chu and CC Capital is stated with specificity, as well as Chinh Chu's intentions with respect to Chinh Chu's actions against Parmar, members of the Independent Committee and their professionals for the purpose of acquiring CHT's assets for little or no consideration, including his employment of extortion, threats, concealment and the engagement of subordinates to carry out his plan to steal CHT's assets from CHT and Parmar and the Parmar Entities. Chinh Chu's corruption of members of the CHT Independent Committee to obtain their complicity; lies and misstatements to Parmar are set forth; the manipulation of CHT's financial and legal advisors are included; and, Chinh Chu's behind-the-scenes manipulations are all circumstances stated in the Cross-claims with particularity and specificity. Chinh Chu is alleged in the Cross-claims to have made (1) material misrepresentations of facts, (2) with knowledge of the misrepresentation's "falsity", (3) for the purpose of inducing reliance from Parmar, the Parmar Entities and the Plaintiffs in the Adversary Complaint, (4) which aforesaid reliance was justified because of the false information and promises made to the Plaintiffs and Parmar, and (5) the substantial losses, over $250 million, resulting from Plaintiffs', Parmar's, the Parmar Entities' and the Board of CHT's reliance on Chinh Chu's actions have been set out in detail in the Cross-claim complaint. Fraud claims

against CC Capital are more than adequately stated in detail, place and time and explained in the Cross-claim against it and Chinh Chu.

Also, CC Capital's claim that the Cross-claims do not "distinguish between CC Holdco (CC Capital here) and CHT Holdco is because CC Holdco, CHT Holdco and Chinh Chu are one team working to accomplish Chinh Chu's goals and which Chinh Chu controls, directly or through his appointed subordinates, to obtain Chinh Chu's goal of stealing all of CHT's assets through the "go private" transaction and a fraudulent Chapter 11 filing and rigged auction sales of CHT's assets to entities owned or controlled by CC Capital and Chinh Chu on terms and in accordance with procedure adopted for the sole purpose of precluding or discouraging additional bidders and thus allowing for entities owned or controlled by CC Capital and Chinh Chu to acquire CHT's assets at prices substantially below the value of these assets as established by the financial advisors engaged by CHT and other bidders, such as GSS and Flexpoint Ford, whose offers were brushed off by officials and professionals of CHT who are under the control of Chinh Chu!

The Cross-claims clearly state claims of fraud by CC Capital and CHT Holdco, plus Chinh Chu, their mastermind!

**D. <u>Parmar, FUH and CHLLC Have Standing Under F.R.C.P. 12(b)(1)</u>**

The final basis seeking Dismissal of the Cross-claims asserted by CC Capital and Chinh Chu is their assertion that Parmar, FUH and CHLLC lack standing under FRCP Rule 12(b)(1) as they claim the Cross-claims contain no "allegation of injury or damages suffered…". As with the Plaintiffs in the Adversary Complaint, Parmar and the Parmar Entities owned a substantial percentage of CHT's shares on the London AIM. The CHT "go private" transaction, at a valuation less than that arrived at by CHT's financial advisors and professionals, D&P and Sun

Trust, as well as KPMG, and the methods and actions employed by CC Capital, Chinh Chu and

those subordinates engaged by Chinh Chu to extort and bribe compliance with his proposal

resulted in substantial losses to Plaintiffs in this Adversary Proceeding as well as Parmar and the

Parmar entities. All of the aforesaid actions as set forth in the Adversary Complaint and Cross-

claims are clearly traceable to CC Capital's and Chinh Chu's conduct and after a trial on the

allegations on the Adversary Proceeding Complaint and Cross-claims, the ultimate decision will

be one favorable to Parmar and the Parmar Entities.

The $100 million injury to Parmar, FUH and CHLLC from CC Capital's and Chinh

Chu's fraudulent actions is identified in the Adversary Complaint from their percentage

ownership of CHT shares (68% of $309 million) and the DOJ's and IRS' seizure of the Parmar

Shareholder Redemption Payments of approximately $85 million, reduced by certain payments

received post "go private" transaction closing. All of the aforesaid issues are before this Court, as

are all of the parties involved. The resolution of these issues of liability and entitlement between

the Plaintiffs on the Adversary Proceeding Complaint and Parmar and the Parmar Entities on the

Answer to the Adversary Proceeding Complaint and the Cross-claims are core proceedings in

their Chapter 11 case. A holding in favor of Parmar, FUH and CHLLC on the Cross-claim is also

a victory for the Plaintiffs in the Adversary Proceedings Complaint and their creditors.

For the reasons stated above, Parmar, FUH and CHLLC have standing to assert the

Cross-claims in this Bankruptcy Court and in this Chapter 11 case and the Motion of CC Capital

and CHT Holdco on behalf of Chinh Chu to dismiss the Cross-claims for lack of standing should

be denied.

## **CONCLUSION**

For the foregoing reasons, Parmjit "Paul" Parmar, First United Health, LLC and

Constellation Health, LLC respectfully request that this Court deny the Motion to Dismiss Cross-

claims filed by CC Capital, CHT Holdco LLC and CHT Holdco LLC.


Dated: August 13, 2018
     New York, New York


                           Respectfully submitted,
                           /s/ Charles E. Simpson

                           Windels Marx Lane & Mittendorf, LLP
                           By:   Charles E. Simpson, Esq.
                                Jeffrey C. Hoffman, Esq.
                           *Attorneys for the Defendants and Cross-Claim Plaintiffs*
                           156 West 56th Street
                           New York, New York 10019
                           (212) 237-1000
                           (212) 262-1215 Facsimile
                           csimpson@windelsmarx.com
                           jhoffman@windelsmarx.com