Mark T. Power, Esq.
John P. Amato, Esq.
**THOMPSON COBURN HAHN & HESSEN LLP**
488 Madison Avenue, Suite 1400
New York, New York 10022
Telephone:   (212) 478-7200
E-mail:       mpower@hahnhessen.com
              jamato@hahnhessen.com

*Counsel to the Liquidating Trustee*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x
| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Orion HealthCorp, Inc., *et al.*, | : | Case No. 18-71748-67 (AST) |
| | : | Case No. 18-71789 (AST) |
| Debtors. | : | Case No. 18-74545 (AST) |
| | : | |

---------------------------------------------------------------------x (Jointly Administered)

| | | |
|---|---|---|
| Howard M. Ehrenberg in his capacity as Liquidating | : | |
| Trustee of Orion Healthcorp, Inc., *et al.*, CHT | : | |
| Holdco, LLC, and CC Capital CHT Holdco LLC, | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | Adv. Pro. No. 18-08053 (AST) |
| | : | |
| Parmjit Singh Parmar a/k/a Paul Parmar, *et al.*, | : | |
| | : | |
| Defendants. | : | |

--------------------------------------------------------------------- x

# MEMORANDUM OF LAW IN SUPPORT OF THE LIQUIDATING TRUSTEE'S MOTION FOR ENTRY OF DEFAULT AND ENTRY OF FINAL DEFAULT JUDGMENT AGAINST DEFENDANT AQUILA ALPHA LLC

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

JURISDICTION AND VENUE ............................................................................... 2

PERTINENT PROCEDURAL AND FACTUAL BACKGROUND ........................................... 3

    A.   Factual Background ............................................................................... 3

    B.   This Adversary Proceeding ...................................................................... 8

ARGUMENT ........................................................................................................ 10

   I.   The Defendant Has Not Answered Or Otherwise Responded To The Second Amended Complaint and Thus Has Admitted The Allegations Set Forth Therein .................................. 10

   II.   A Default Judgment Should Be Entered Against Defendant On Counts V Through VIII Of The Second Amended Complaint .......................................................................... 11

     A.   Transfer Of The Colts Neck Mortgage To Defendant Was An Actual Fraudulent Transfer Under The Bankruptcy Code And Delaware Law (Counts V and VII) ................. 11

     B.   Transfer Of The Colts Neck Mortgage To Defendant Was A Constructive Fraudulent Transfer Under The Bankruptcy Code And Delaware Law (Counts VI and VIII) .............. 18

   III.   The Court Should Declare the Colts Neck Property Mortgage Property Of The Debtors' Estates Ordering Turnover To The Liquidating Trustee .............................. 20

   IV.   A Partial Default Judgment Pursuant to Federal Rule 54(b) Is Appropriate ................ 22

CONCLUSION ..................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
   106 F.3d 11 (2d Cir. 1997) ................................................................................... 23

*Au Bon Pain Corp. v. Artect, Inc.*,
   653 F.2d 61 (2d Cir. 1981) ................................................................................... 10

*Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Grp., LLC)*,
   362 B.R. 624 (Bankr. S.D.N.Y. 2007) ................................................................ 15

*Beskrone v. Opengate Cap. Grp., LLC (In re Pennysaver USA Publ'g, LLC)*,
   602 B.R. 256 (Bankr. D. Del. 2019) ......................................................... 13, 14, 19

*Bruno Mach. Corp. v. Troy Die Cutting Co. (In re Bruno Mach. Corp.)*,
   435 B.R. 819 (N.D.N.Y. 2010) ............................................................................ 12

*Coleman Co. v. Hlebanja*,
   No. 96 Civ. 1288 (MBM), 1997 U.S. Dist. LEXIS 225 (S.D.N.Y. Jan. 15, 1997) ................................................................................................................... 24

*In re Community Hosp. of Rockland County*,
   5 B.R. 7 (Bankr. S.D.N.Y. 1979) ........................................................................ 21

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
   446 U.S. 1 (1980) ................................................................................................. 23

*Dodge v. Wilmington Tr. Co.*,
   No. 1257-K, 1995 Del. Ch. LEXIS 26 (Del. Ch. Feb. 3, 1995) ........................... 19

*Farberware, Inc. v. Groben*,
   No. 89 Civ. 6240 (PKL), 1991 U.S. Dist. LEXIS 8994 (S.D.N.Y. 1991) ............. 10

*Geltzer v. Soshkin (In re Brizinova)*,
   588 B.R. 311 (Bankr. E.D.N.Y. 2018) ................................................................ 22

*Ginett v. Comput. Task Grp.*,
   962 F.2d 1085 (2d Cir. 1992) .............................................................................. 23

*Hassett v. Goetzmann*,
   10 F.Supp.2d 181 (N.D.N.Y. 1998) .................................................................... 15

*In re Ir. Bank Resolution Corp.*,
559 B.R. 627 (Bankr. Del. 2016) ........................................................................21

*Kramer v. Mahia (In re Kahn)*,
No. 14-MC-1674 (PKC), 2015 U.S. Dist. LEXIS 133241 (E.D.N.Y. Sept. 30,
2015) ...............................................................................................................21, 22

*La Barbera v. Fed. Metal & Glass Corp.*,
666 F. Supp. 2d 341 (E.D.N.Y. 2009) ................................................................10

*McCord v. Ally Fin., Inc. (In re USA United Fleet, Inc.)*,
559 B.R. 41 (Bankr. E.D.N.Y. 2016) ............................................................13, 19

*Mendelsohn v. Jacobowitz (In re Jacobs)*,
394 B.R. 646 (Bankr. E.D.N.Y. 2008)...........................................................19, 22

*News Journal Co. v. Little Caesars of Del.*,
No. 1999-04-241, 2000 Del. C.P. LEXIS 77 (Del. Common Pleas Dec. 20,
2000) ...................................................................................................................19

*Nisselson v. Empyrean Inv. Fund, L.P. (In re MarketXT Holdings Corp.)*,
376 B.R. 390 (Bankr. S.D.N.Y. 2007)...........................................13, 14, 15, 17

*Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs
Credit Partners L.P. (In re Fedders N. Am., Inc.)*,
405 B.R. 527 (Bankr. D. Del. 2009) ...................................................................13

*Pergament v. Yerushalmi (In re Yerushalmi)*,
440 B.R. 24 (E.D.N.Y. 2010) ............................................................................12

*Picard v. Taylor (In re Park S. Sec., LLC)*,
326 B.R. 505 (Bankr. S.D.N.Y. 2005) ................................................................14

*Powerserve Int'l, Inc. v. Lavi*,
239 F.3d 508 (2d Cir. 2001)................................................................................10

*Renco Grp., Inc. v. MacAndrews AMG Holdings LLC*,
No. 7668-VCN, 2015 Del. Ch. LEXIS 25 (Del. Ch. Jan. 29, 2015)......................19

*Salomon v. Kaiser (In re Kaiser)*,
722 F.2d 1574 (2d Cir. 1983)..............................................................................14

*Sharp Int'l Corp. v. St. Bank and Trust Co. (In re Sharp Int'l Corp.)*,
403 F.3d 43 (2d Cir. 2005)............................................................................13, 14

*Siemens Westinghouse Power Corp. v. Dick Corp.*,
220 F.R.D. 232 (S.D.N.Y. 2004) ........................................................................23

iv

*Sullivan v. Marble Unique Corp.*,
No. 10 CV 3582 (NGG)(LB), 2011 U.S. Dist. LEXIS 129867 (E.D.N.Y. Aug. 30, 2011) ................................................................................................................11

*Tese-Milner v. Edidin & Assocs. (In re Operations NY LLC)*,
490 B.R. 84 (Bankr. S.D.N.Y. 2013) ................................................................19

*In re Tribune Co. Fraudulent Conveyance Litig.*,
499 B.R. 310 (S.D.N.Y. 2013) ..........................................................................12

*In re Vaniman Int'l, Inc.*,
22 B.R. 166 (Bankr. E.D.N.Y. 1982) .................................................................17

*Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*,
373 F.3d 241 (2d Cir. 2004) ..............................................................................10

*Wallach v. Buchheit (In re Northstar Dev. Corp.)*,
465 B.R. 6 (Bankr. W.D.N.Y. 2012) .................................................................13

*Wedtech Corp. v. Biaggi & Ehrlich*,
137 B.R. 575 (Bankr. S.D.N.Y. 1992) ..............................................................12

**Statutes**

6 Del. C. § 1304(a)(1) ..........................................................................1, 11, 13, 15

6 Del. C. § 1304(a)(2) ..........................................................................1, 18, 19, 20

6 Del. C. § 1304(b) ...........................................................................................14

6 Del. C. § 1305(a) ..............................................................................1, 18, 19, 20

11 U.S.C. § 101(31)(B)(ii) ................................................................................16

11 U.S.C. § 363 ..................................................................................................21

11 U.S.C. § 541 .............................................................................................21, 22

11 U.S.C. § 541(a)(3) .........................................................................................21

11 U.S.C. § 542 ......................................................................................1, 20, 22

11 U.S.C. § 544 ......................................................................................1, 11, 12

11 U.S.C. § 544(b)(1) .........................................................................................12

11 U.S.C. § 548(a)(1)(A) ......................................................................1, 11, 12, 13, 15

11 U.S.C. § 548(a)(1)(B) ......................................................................1, 18, 19, 20

11 U.S.C. § 548(a)(1)(B)(i) .................................................................................18

11 U.S.C. § 548(a)(1)(B)(ii) ...............................................................................18

11 U.S.C. § 550 ......................................................................................................1

28 U.S.C. § 157 ......................................................................................................2

28 U.S.C. § 157(b) .................................................................................................3

28 U.S.C. § 1334 ....................................................................................................2

28 U.S.C. § 1409(a) ...............................................................................................2

Fed. R. Bankr. P. 7004(b)(3) ..............................................................................11

Fed. R. Bankr. P. 7054 .......................................................................................1, 3

Fed. R. Bankr. P. 7055 .......................................................................................1, 3

Fed. R. Civ. P. 54(b) ...........................................................................1, 22, 23, 24

Fed. R. Civ. P. 55(a) ............................................................................................10

Fed. R. Civ. P. 55(b) ................................................................................1, 10, 11

Fed. R. Civ. P. 64 ...................................................................................................9

N.J. Stat. Ann. §§ 25:2-20-25:2-33 .....................................................................13

N.Y. CLS CPLR, Art. 62 ........................................................................................9

N.Y. CLS CPLR, Art. 63 ........................................................................................9

**Other Authorities**

Local Bankruptcy Rule 7055-1 ...............................................................................1

Uniform Fraudulent Transfer Act ....................................................................12, 13

Plaintiff Howard M. Ehrenberg, in his capacity as Liquidating Trustee ("Plaintiff" or "Liquidating Trustee") of Orion HealthCorp, Inc. ("Orion"), Constellation Healthcare Technologies, Inc. ("CHT"), and certain of their affiliated debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), by his counsel Thompson Coburn Hahn & Hessen LLP, respectfully submits this memorandum of law in support of the motion (the "Motion") pursuant to Rule 7055-1 of the Local Bankruptcy Rules of the Eastern District of New York, Rule 55(b)(2) of the Federal Rules of Civil Procedure (the "Federal Rules") (made applicable to this adversary proceeding by Rule 7055 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")), and Federal Rule 54(b) (made applicable to this proceeding by Bankruptcy Rule 7054), for entry of an order (a) entering default against Defendant Aquila Alpha, LLC (the "Defendant"); (b) directing immediate entry of a final default judgment against Defendant on Counts  I and V through VIII of the Second Amended Adversary Proceeding Complaint dated January 14, 2020 (the "Second Amended Complaint"), (i) avoiding the transfer of the Colts Neck Property Mortgage[1] to Defendant as an actual and constructive fraudulent transfer under 11 U.S.C. (the "Bankruptcy Code") §§ 548(a)(1)(A), (a)(1)(B) and 550 and Bankruptcy Code §§ 544 and 550 and Delaware Code §§ 1304(a)(1), (a)(2) and 1305(a), and (ii) directing turnover of the Colts Neck Property Mortgage to the Liquidating Trustee pursuant to Bankruptcy Code § 542; and (c) for such other and further relief as this Court deems just and proper.

## PRELIMINARY STATEMENT

In March 2016, mere months after raising $45 million in connection with the Sham Acquisition of MDRX, Paul Parmar ("Parmar"), the former CEO and Chairman of the Board

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Second Amended Complaint.

of CHT, fraudulently diverted $3.8 million of CHT's money to fund Defendant's purchase of the Colts Neck Property Mortgage with *zero* consideration provided to CHT in return. As confirmed by e-mail correspondence and other documentary evidence, Defendant was formed only two months prior to the sale by two of Parmar's close personal associates, had no business dealings with CHT, and was owed no debt by CHT, and no antecedent debt was satisfied that would explain Defendant's receipt of the Colts Neck Property Mortgage, worth millions of dollars, while providing no consideration to CHT in return. In addition, at the time CHT funded Defendant's purchase of the Colts Neck Property Mortgage, CHT was in dire financial straits, with negative income in the millions of dollars and recorded losses, and an outstanding, unsatisfied judgment issued against it of over $190,000.

In this Motion, the Liquidating Trustee has established his *prima facie* case that the purchase and transfer of the Colts Neck Property Mortgage to Defendant with CHT funds was an actual and constructive fraudulent transfer under both the Bankruptcy Code and Delaware's Uniform Fraudulent Transfer Act ("UFTA"). Defendant, having defaulted in answering the Second Amended Complaint, has failed to dispute and, therefore, admitted liability to the Liquidating Trustee, warranting the entry of default and a final default judgment against Defendant on Counts I and V through VIII of the Second Amended Complaint and directing the turnover of the Colts Neck Property Mortgage to the Liquidating Trustee.

## JURISDICTION AND VENUE

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this Court is proper pursuant to 28 U.S.C. § 1409(a). This is a core proceeding

pursuant to 28 U.S.C. § 157(b). The statutory bases for the relief requested herein are Federal Rules §§ 54(b) and (c) and 55(b)(2) and Bankruptcy Rules 7054 and 7055.

## PERTINENT PROCEDURAL AND FACTUAL BACKGROUND

The relevant facts and allegations summarized herein are set forth in the (a) Declaration of Timothy J. Dragelin in Support of Chapter 11 Petitions and First Day Motions dated March 16, 2018 [Case No. 18-71748, Doc. No. 2] (the "First Day Dragelin Dec."); (b) the Declaration of Frank A. Lazzara in Support of the Motion dated May 20, 2021 (the "Lazzara Dec."); (c) the Declaration of John P. Amato in Support of the Motion dated August 4, 2021 (the "Amato Dec."); and (d) Plaintiff's well-pled Second Amended Complaint [Doc. No. 303], a true and complete copy of which is annexed to the Amato Dec. as Exhibit A.

### A.     Factual Background

According to property records maintained by Monmouth County, New Jersey, Parmar is the current owner of the Colts Neck Property, located at 18/19 Colts Gait Lane, Colts Neck, New Jersey, on which he built the 39,000 square foot mansion in which he resides. *See* Amato Dec., Ex. A at ¶ 181; Ex. B.  On or about January 25, 2008, Parmar obtained from Deutsche Bank Trust Company Americas ("Deutsche Bank") a mortgage loan in connection with the Colts Neck Property and executed a promissory note in the original principal amount of $23.7 million (the "Note"). *See* Lazzara Dec., Ex. A.  To secure payment of the Note, on January 25, 2008, Parmar granted to Deutsche Bank the Colts Neck Property Mortgage on the Colts Neck Property, which was recorded on February 7, 2008 in the Monmouth County Clerk's Office. *See id.*, Ex. B.

On or about December 6, 2015, only days before CHT announced a second capital raise earmarked for the Sham Acquisition of MDRX (*see* Amato Dec., Ex. A at ¶ 82), Zaharis e-mailed Parmar a letter purportedly written by John Petrozza ("Petrozza"), a close associate of Parmar and member of CHLLC's Board of Directors, in which Petrozza offered to purchase, by short-sale, the Colts Neck Property for $6.75 million. *See* Lazzara Dec., Ex. C. Parmar requested that Deutsche Bank accept Petrozza's short-sale offer as payment in full of the $23.7 million due under the Note and to waive the remaining balance of nearly $17 million due and owing. *See* Lazzara Dec., Ex. D. By letter dated December 14, 2015, Deutsche Bank's counsel, Emmet, Marvin & Martin, LLP ("EMM"), accepted Petrozza's short-sale offer on the condition that the sale be an "arm's length" transaction. *See id.* On January 11, 2016, Zaharis e-mailed Parmar a letter, also allegedly from Petrozza, reducing the earlier short-sale offer to $3 million, purportedly because of an estimated $3.25 million it would cost to settle various liens on the Colts Neck Property. *See id.*, Ex. E.

Throughout January 2016, e-mails represented to be from Tomer Vardi ("Vardi"), another close personal associate of Parmar, from the Vardi Yahoo Account[2] discussed the proposed transaction with Deutsche Bank, including re-structuring the transaction as a sale of the Colts Neck Property Mortgage and Note, as opposed to a short-sale of the Colts Neck Property itself. *See* Lazzara Dec., Ex. F. The e-mails represented that Vardi was Petrozza's "Partner" and the "Managing Partner for Abruzzi Investments, a home office for Petrozza and Vardi family investments." *Id.* Vardi advised Deutsche Bank that the transaction would

---

[2] Evidence obtained by the Liquidating Trustee demonstrates that the Vardi Yahoo Account was represented as being associated with Vardi, but was often used by Zaharis and Parmar, who pretended to be Vardi, to shield the fact that they were involved in the Colts Neck Property Mortgage transaction and various other real estate transactions alleged in the Second Amended Complaint. *See* Amato Dec., Ex. A, ¶ 179-80. In fact, in communications with Deutsche Bank, "Vardi" signed one of the e-mails from Zaharis and then attempted to cover up the "mistake" by explaining that he had "cut and pasted a wrong email reply." Lazzara Dec., Ex. F.

4

be "an asset purchase under Abruzzi Investments/Trust via a holding entity created for this purchase, but directed for the personal use of [his] Partner, John Petrozza." *Id.* Vardi stated that he was introduced to the Colts Neck Property, not by Parmar, but by an unnamed "Executive at Goldman Sachs who lives in the neighborhood." *Id.*

Despite Vardi's representations to Deutsche Bank that he was some unrelated, third party, Vardi, Parmar and Zaharis were, in fact, working together behind the scenes to effectuate the sale. Indeed, on January 16, 2016, in advance of a scheduled call between Vardi and Deutsche Bank, Zaharis e-mailed Parmar an outline of talking points – titled "Tomer Vardi Speech to DB" – for Vardi to present to Deutsche Bank concerning the transfer of the Colts Neck Property Mortgage, which included information on Petrozza's background, relationship with Vardi and plans for the Colts Neck Property. *See* Lazzara Dec., Ex. G. The talking points indicated that if the Colts Neck Property Mortgage was transferred to "Abruzzi," then Parmar would vacate the Colts Neck Property within thirty days and that Petrozza planned to live in the Colts Neck Property, rather than flip it. *Id.* In a follow-up e-mail to Deutsche Bank after the call, Vardi designated himself Deutsche Bank's "central point of contact" for the transaction, representing that his "communication with seller [Parmar] has been slow and not the smoothest or best to date." Lazzara Dec., Ex. F.

By e-mail dated January 22, 2016, Deutsche Bank agreed to a sale of the Colts Neck Property Mortgage and Note for $3.8 million. *Id.* Vardi responded that Petrozza agreed to Deutsche Bank's $3.8 million offer and that Defendant would be (i) formed in Delaware to hold the Colts Neck Property Mortgage, (ii) managed by Vardi, and (iii) wholly owned by the "Abruzzi Trust, which is [Petrozza's] family trust." *Id.* That same day, Defendant was incorporated in Delaware by the filing of a Certificate of Formation, purportedly executed by

Vardi. *See* Lazzara Dec., Ex. H.  On January 26, 2016, Parmar e-mailed Zaharis with the subject line "here is what we should send to DB …", and stating therein that Defendant, the entity acquiring the Colts Neck Property Mortgage, was owned and controlled by Vardi, as its Manager, and the Abruzzi Trust, as its sole member. *See* Lazzara Dec., Ex. I.

Deutsche Bank and Defendant memorialized the transaction by executing a Note Sale Agreement dated as of March 2, 2016. *See* Lazzara Dec., Ex. J.  Pursuant to the Note Sale Agreement, and Deutsche Bank's requirement of an arms-length transaction provision, Defendant covenanted that "no hidden terms or special understandings exist[ed] between [Defendant] and [Parmar]." *Id.*, § 3.3.7.  By written Assignment of Mortgage dated as of March 31, 2016, the Colts Neck Property Mortgage was assigned from Deutsche Bank to Defendant (the "Assignment"), which was recorded with the Monmouth County Clerk's Office on May 19, 2016. *See* Lazzara Dec., Ex. K.  No other assignments of the Colts Neck Property Mortgage have been recorded, and Defendant remains the record owner of the Colts Neck Property Mortgage to date.  *See* Amato Dec., ¶ 8.

E-mails and bank records confirm that the transfer and sale of the Colts Neck Property Mortgage to Defendant was funded solely with CHT funds that originated, upon information and belief, from the capital raise completed in connection with the Sham Acquisition of MDRX only two months earlier. *See* Amato Dec., Ex. A, ¶ 194.  Specifically, by e-mail dated March 30, 2016, Parmar instructed Wilmington Trust to wire transfer $3.8 million from CHT's checking account at Manufacturer's Trust Bank (the "M&T Bank Account") to the attorney escrow account of Kriss & Feuerstein, LLP (the "K&F Escrow Account"), attorneys for Defendant, and to describe the "memo section" as "Aquila Alpha – DB Debt Purchase." *See* Lazzara Dec., Ex. L.  That same day, $3.8 million was wire transferred from the M&T

Bank Account to the K&F Escrow Account, with the transfer described on the K&F Escrow Account bank statements as "Constellation Healthcare Technologies, Aquila Alpha LLC/ 18/19 Colts Gait Lane." Lazzara Dec., Ex. M; Amato Dec., Ex. C. Two days later, on April 1, 2016, $3.8 million was transferred from the K&F Escrow Account to Deutsche Bank, described as "Deutsche Bank, Aquila Alpha LLC/ 18/19 Colts Gait Lane." Amato Dec., Ex. C.

In September 2017, following the removal of Parmar and the other Board Member Defendants from CHT, FTI Consulting, Inc. ("FTI") was appointed to conduct a forensic examination of CHT's business and handle CHT's day-to-day operations. *See* Lazzara Dec., ¶ 3. According to FTI's review of CHT's books and records, there is no evidence that CHT received any compensation for funding Defendant's purchase of the Colts Neck Property Mortgage. *See id.*, ¶ 21. There is also no evidence that Defendant performed any services for or had any business dealings with CHT, or that there was a preexisting debt owed to Defendant, or antecedent debt satisfied. *See id.* In fact, FTI found absolutely no evidence of any communications between Defendant and CHT predating the sale of the Colts Neck Property Mortgage, which would establish that Defendant was involved with CHT in any business capacity. *See id.*

In addition, at the time that the $3.8 million was diverted from CHT, CHT was in dire financial straits. Debtors' tax returns show that, at the time of the transfer, Debtors had negative income in the millions of dollars and had recorded losses for 2016 and the year prior. Specifically, for tax year ending 2015, Debtors' amended income tax return restated revenue to evidence a net operating loss of -$11,392,467 for the year and retained Cumulative Income of -$94,135,177 as of December 31, 2015. *See* Lazzara Dec., Ex. N. For tax year ending

2016, Debtors evidenced a net operating loss for 2016 of -$39,007,282 and retained Cumulative Income of -$112,905,441. *See id.*, Ex. O. For tax year ending 2017, Debtors stated a net operating loss of -$20,492,714 and retained Cumulative Income of -$133,398,156. *See id.*, Ex. P. Moreover, CHT had an outstanding unsatisfied judgment issued against it in the amount of $194,185 by the Southern District Court of Texas for unpaid deferred compensation. *See* Amato Dec., Ex. D.

> **B.**     **This Adversary Proceeding**

On March 16, 2018, (the "Petition Date"), each of the Debtors, except for New York Network Management, L.L.C., filed voluntary petitions for relief under Chapter 11 of title 11 of the Bankruptcy Code in this Court. On April 4, 2018, Plaintiff commenced this adversary proceeding and, on June 4, 2018, filed Debtors' First Amended Adversary Proceeding Complaint ("First Amended Complaint") [Doc. No. 24], naming Defendant as a defendant herein. On June 4, 2018, the Summons and First Amended Complaint were properly served upon Defendant by first class mail to National Registered Agents, Inc., Defendant's registered agent for service of process with Delaware's Division of Corporations. *See* Amato Dec., Exs. E, F. On July 10, 2018, an answer and cross-claim was filed to the First Amended Complaint on behalf of Parmjit Singh Parmar and the "Parmar Entities" [Doc. No. 51]. The answer and cross-claim stated that the "Parmar Entities" were identified on Exhibit A to the answer and cross claim, but such exhibit was omitted from the pleading. On July 25, 2018, "Schedule A" to the answer and cross-claim was filed which identified sixteen entities including the Defendant [Doc. No. 65]. Presumably, the Schedule A is the Exhibit A referenced in the answer and cross-claim and is the exhibit that identifies the "Parmar Entities".[3]

---

[3] In a subsequent pleading by the same counsel nearly two years later it was represented to the Court that the Defendant is not one of the "Parmar Entities". *See Affirmation of Charles Simpson Correcting Defendants Listed As*

On July 3, 2018, the Court granted and entered an Order of Attachment, pursuant to Articles 62 and 63 of the New York Civil Practice Law and Rules and Federal Rule 64, in favor of Debtors and against, among others, Defendant, expressly attaching the Colts Neck Property Mortgage (the "Attachment Order"). *See* Amato Dec., Ex. F. Pursuant to the Attachment Order, this Court ordered that, for purposes of securing the sum of no less than $100 million, the Sheriff's Office shall "levy upon [Defendant] within your jurisdiction at any time before final judgment upon [the Colts Neck Property Mortgage] … as subsequently assigned to [Defendant] …." *Id.*, at p. 3.

On January 14, 2021, Plaintiff filed the Second Amended Complaint, alleging, *inter alia*, that the transfer of the Colts Neck Property Mortgage was an actual and/or constructive fraudulent conveyance under the Bankruptcy Code and Delaware law and avoiding and directing the turnover of the Colts Neck Property Mortgage to the Liquidating Trustee. *See* Amato Dec., Ex. A. On January 19, 2021, the Supplemental Summons and Second Amended Complaint were duly served upon Defendant by first class mail to Defendant's registered agent. *See* Amato Dec., Ex. H.[4]

Defendant was required to answer or file a responsive motion to the Second Amended Complaint on or before March 15, 2021, but failed to do so. To date, Defendant has not appeared, answered or otherwise responded to the Second Amended Complaint and, accordingly, is in default thereof.

---

*Movants and Represented By Windels Marx Lan & Mittendorf, LLP* [Doc. No. 272]. It is unclear at best if that pleading also served to remove Defendant from the answer and cross-claim which had been filed with respect to the First Amended Complaint.

[4] The Second Amended Complaint was also served on counsel which may have filed the answer and cross-claim to the First Amended Complaint on behalf of Defendant.

## ARGUMENT

### I. The Defendant Has Not Answered Or Otherwise Responded To The Second Amended Complaint and Thus Has Admitted The Allegations Set Forth Therein

Pursuant to Federal Rule 55(a), a default judgment may be entered whenever the party against whom a judgment of affirmative relief is sought has failed to plead or defend. *See, e.g., Powerserve Int'l, Inc. v. Lavi,* 239 F.3d 508, 513-14 (2d Cir. 2001). A default judgment may be entered by the Court even if the party's default has not been entered by the clerk. *See* Fed. R. Civ. P. 55(b); *La Barbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 347 (E.D.N.Y., March 10, 2009). ("Although an application for entry of default should be made before a motion for entry of default judgment, courts will generally excuse a failure to obtain entry of default before the motion for default judgment is made.").

On a motion for default judgment, the well-pleaded facts in the complaint relating to liability are deemed true, and a defaulting party has no right to dispute the issue of liability. *See Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 246 (2d Cir. 2004) ("[Rule 55] tracks the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party."); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (finding that after a Rule 55 default for failure to plead or otherwise defend, the court accepts as true all of the factual allegations of the complaint, except those relating to damages). "The default is not, however, tantamount to an admission of the legal conclusions asserted in the complaint, and accordingly, even if an order of default is entered, the court must still determine whether the factual allegations adequately plead a cognizable claim." *Farberware, Inc. v. Groben*, No. 89 Civ. 6240 (PKL), 1991 U.S. Dist. LEXIS 8994, at *24-25 (S.D.N.Y. 1991).

Pursuant to Bankruptcy Rule 7004(b)(3), Defendant was properly served with the Summons and First Amended Complaint and the Supplemental Summons and Second Amended Complaint *via* first class mail to its registered agent in Delaware. *See* Amato Dec., Exs. E, F, H. Defendant has not appeared, pleaded or otherwise responded to the Amended Complaint or Second Amended Complaint. Defendant's failure to appear or contest the allegations in the Amended Complaint or Second Amended Complaint "constitutes an admission of [Plaintiff's] well-pleaded factual allegations" therein. *Sullivan v. Marble Unique Corp.*, No. 10 CV 3582 (NGG)(LB), 2011 U.S. Dist. LEXIS 129867, at *8 (E.D.N.Y. Aug. 30, 2011). Accordingly, the Liquidating Trustee respectfully requests that this Court enter default against Defendant.

## II. A Default Judgment Should Be Entered Against Defendant On Counts V Through VIII Of The Second Amended Complaint

The undisputed facts and allegations set forth in the Second Amended Complaint establish the Liquidating Trustee's *prima face* right to the requested relief and entry of a final default judgment against Defendant pursuant to Federal Rule 55(b)(2) and 55(b). Each of the Liquidating Trustee's claims will be addressed, in turn, below.

### A. Transfer Of The Colts Neck Mortgage To Defendant Was An Actual Fraudulent Transfer Under The Bankruptcy Code And Delaware Law (Counts V and VII)

In the Fifth and Seventh Causes of Action, the Liquidating Trustee seeks a finding that the transfer of the Colts Neck Property Mortgage to Defendant funded solely with money of CHT was an actual fraudulent transfer pursuant to Bankruptcy Code § 548(a)(1)(A) and/or Bankruptcy Code § 544 and Delaware Code § 1304(a)(1).

Section 548(a)(1)(A) of the Bankruptcy Code allows a trustee to "avoid any transfer … of an interest of the debtor in property, or any obligation … incurred by the debtor, that

was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became … indebted." 11 U.S.C. § 548(a)(1)(A). A transfer may be avoided as actually fraudulent under § 548(a)(1)(A), if (1) the debtor had an interest in the property transferred; (2) the transfer occurred within two years of the petition date; and (3) the transfer was made with actual intent to hinder delay or defraud creditors. *Bruno Mach. Corp. v. Troy Die Cutting Co. (In re Bruno Mach. Corp.)*, 435 B.R. 819, 852-53 (N.D.N.Y. 2010).

Section 544(b)(1) gives the Liquidating Trustee the power to "avoid any transfer of an interest of the debtor in property … that is voidable under applicable law by a creditor." 11 U.S.C. § 544(b)(1). Section 544 "empowers the trustee to utilize, on behalf of the estate, any legal theory of recovery that a creditor could assert under state law." *In re Tribune Co. Fraudulent Conveyance Litig.*, 499 B.R. 310, 315 (S.D.N.Y. 2013); *see also Pergament v. Yerushalmi (In re Yerushalmi)*, 440 B.R. 24, 26 (E.D.N.Y. 2010) ("11 U.S.C. § 544(b)(1) … permits a trustee to assert state law claims on behalf of creditors."); *Wedtech Corp. v. Biaggi & Ehrlich*, 137 B.R. 575, 577 (Bankr. S.D.N.Y. 1992) ("Section 544(b) of the Code is a conduit to state law substantive remedies.") (internal citations and quotations omitted). Under Delaware's version of the UFTA, codified in Delaware Code §§ 1301-1311, a "transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made

the transfer or incurred the obligation … [w]ith actual intent to hinder, delay or defraud any creditor of the debtor." 6 Del. C. § 1304(a)(1).[5]

The Liquidating Trustee bears the burden of proving that a transfer was made "with actual intent to hinder, delay, or defraud" present or future creditors. *Wallach v. Buchheit (In re Northstar Dev. Corp.)*, 465 B.R. 6, 12 (Bankr. W.D.N.Y. 2012) (quoting Bankruptcy Code § 548(a)(1)(A)). Actual fraudulent intent is, however, rarely established by direct evidence, *see McCord v. Ally Fin., Inc. (In re USA United Fleet, Inc.)*, 559 B.R. 41, 57 (Bankr. E.D.N.Y. 2016), and thus can be inferred by the presence of "badges of fraud," which are "circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." *Sharp Int'l Corp. v. St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005); *see also Nisselson v. Empyrean Inv. Fund, L.P. (In re MarketXT Holdings Corp.)*, 376 B.R. 390, 405 (Bankr. S.D.N.Y. 2007).

The badges of fraud commonly recognized by the Second Circuit include "(1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit, or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of

---

[5] Delaware Code § 1304(a)(1) and Bankruptcy Code § 548(a)(1)(A) apply the same requirements, and the Court may look to cases interpreting the Bankruptcy Code in applying Delaware's version of the UFTA. *See Beskrone v. Opengate Cap. Grp., LLC (In re Pennysaver USA Publ'g, LLC)*, 602 B.R. 256, 270 (Bankr. D. Del. 2019) (noting that the elements of actual fraud under Delaware law and the Bankruptcy Code are substantially the same); *Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 547 (Bankr. D. Del. 2009) ("Since the UFTA is similar to the fraudulent transfer provisions of the Bankruptcy Code, courts also look to cases interpreting the Bankruptcy Code in applying the UFTA"). Even assuming, *arguendo*, that New Jersey fraudulent conveyance law may apply, New Jersey, like Delaware, adopted the UFTA, (*see* N.J. Stat. Ann. §§ 25:2-20-25:2-33), which mirrors that of Delaware law and the Bankruptcy Code. *See In re Fedders N. Am., Inc.*, 405 B.R. at 547 (noting that the language of the Delaware and New Jersey versions of the UFTA "track the language of each other, and also mirror the language of section 548(a)(1)(A) and (B) of the [Bankruptcy] Code.").

transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors, and (6) the general chronology of events and transactions under inquiry." *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582-83 (2d Cir. 1983); *see also In re Sharp Int'l Corp.*, 403 F.3d at 56. The same or substantially similar "badges of fraud" are codified in Delaware Code § 1304(b). *See In re Pennysaver USA Publ'g, LLC*, 602 B.R. at 270 (The "statutory elements [in Delaware Code § 1304(b)] are incorporated through case law into § 548 in the form of 'badges of fraud.'"). Although the presence of a single badge of fraud is insufficient, "confluence of several can constitute conclusive evidence of an actual intent to defraud, absent significantly clear evidence of a legitimate supervening purpose." *Picard v. Taylor (In re Park S. Sec., LLC)*, 326 B.R. 505, 517-18 (Bankr. S.D.N.Y. 2005) (quoting *Max Sugarman Funeral Home, Inc. v. A.D.B. Investors*, 926 F.2d 1248, 1254-55 (1st Cir. 1991)); *see also Nisselson*, 376 B.R. at 405 ("The existence of several badges of fraud can constitute clear and convincing evidence of actual intent.").

The undisputed facts detailed herein demonstrate that the Liquidating Trustee has proven his *prima facie* case of an actual fraudulent transfer. First, there is no dispute that CHT had an interest in the Colts Neck Property Mortgage, as CHT paid $3.8 million from its M&T Bank Account to fund Defendant's purchase of same, yet received no consideration in return. *See* Lazzara Dec., ¶¶ 20-21, Ex. M. Second, pursuant to the Assignment, the Colts Neck Property Mortgage was transferred and assigned to Defendant on March 31, 2016, which is within two years of the Petition Date. *See id.*, Ex. K. Third, as set forth below, there are sufficient facts to establish the existence of multiple "badges of fraud," which create a conclusive inference that Parmar's transfer of $3.8 million of CHT money to fund Defendant's purchase of the Colts Neck Property Mortgage was made with actual intent to hinder, delay,

or defraud CHT's legitimate creditors under Bankruptcy Code § 548(a)(1)(A) and Delaware Code § 1304(a)(1).

      (i) <u>The lack or inadequacy of consideration received;</u>

First, Parmar orchestrated CHT's transfer of $3.8 million from its M&T Bank Account to fund Defendant's purchase of the Colts Neck Property Mortgage, and CHT received no consideration in return. *See* Lazzara Dec., ¶¶ 20-21, Ex. M. Indeed, the bank records demonstrate that $3.8 million was wire transferred from CHT's M&T Bank Account to the K&F Escrow Account and then to Deutsche Bank, with such transfers clearly identified as relating to Defendant and the Colts Neck Property. *See* Lazzara Dec., Ex. M; Amato Dec., Ex. C. Further, CHT's books and records evidence that Defendant performed no services for and had no business dealings with CHT, CHT owed no preexisting debt to the Defendant, and no antecedent debt was satisfied as a result of the diversion of CHT's funds. *See* Lazzara Dec., ¶ 21.

While the Liquidating Trustee "is relieved from the need to establish … inadequacy of consideration" to make a *prima facie* showing of an actual fraudulent transfer, the total lack of consideration CHT received in exchange for funding Defendant's purchase of the Colts Neck Property Mortgage weighs strongly in favor of a finding of actual fraudulent intent here. *Nisselson,* 376 B.R. at 402-03; *see also Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Grp., LLC)*, 362 B.R. 624, 629 (Bankr. S.D.N.Y. 2007) ("[T]he plaintiff need not allege and prove that the transfer was for less than fair value if actual intent is alleged and proved under Section 548(a)(1)(A)."); *Hassett v. Goetzmann*, 10 F.Supp.2d 181, 188 (N.D.N.Y. 1998) ("The fact that the transfers rendered the Judgment Debtor insolvent and were made

for grossly inadequate consideration undermines any legitimate argument that the Judgment Debtor did not intend to defraud his creditors.").

(ii) <u>The family, friendship or close associate relationship between the parties;</u>

There also can be no doubt of a close relationship between Parmar, CHT and Defendant. E-mails demonstrate that Defendant, a single purpose LLC created only two (2) months before the transfer of the Colts Neck Property Mortgage, is owned by Vardi and Petrozza, two close personal associates of Parmar. *See* Lazzara Dec., Exs. F-I; Amato Dec., Ex. A, at ¶¶ 179, 183. As demonstrated in e-mails, Parmar was working behind the scenes with Zaharis and Vardi to effectuate the transfer of the Colts Neck Property Mortgage to Defendant, although, at the same time, Vardi was purportedly representing to Deutsche Bank that he was an unrelated, third party who had no affiliation with Parmar. *See* Lazzara Dec., Exs. F, G, I. In addition, there can be no dispute that at the time the Colts Neck Property Mortgage was transferred to Defendant utilizing CHT funds, Parmar owned and controlled CHT, as its CEO and Chairman. *See* 11 U.S.C. 101(31)(B)(ii)). E-mails confirm that Parmar instructed and orchestrated CHT's transfer of $3.8 million to finance the transaction in an effort to pass title of the Colts Neck Property Mortgage to Defendant. Lazzara Dec., Ex. L.

(iii) <u>The retention of possession, benefit, or use of the property in question;</u>

Although Vardi purportedly represented to Deutsche Bank that, following the transfer of the Colts Neck Property Mortgage to Defendant, Parmar would transfer title of the Colts Neck Property to Petrozza, who intended to permanently reside at the property (*see* Lazzara Dec., Exs. F, G), Parmar, in fact, retained, and remains, record owner of the Colts Neck Property to date and uses the home as his primary residence. *See* Amato Dec., Ex. A, ¶ 181; Ex. B.

(iv) The financial condition of the party sought to be charged both before and after the transaction in question;

At the time the $3.8 million in CHT funds was diverted to finance the transfer of the Colts Neck Property Mortgage to Defendant in 2016, CHT was in precarious financial straits. Specifically, CHT had an outstanding unsatisfied judgment against it in the amount of $194,185 (*see* Amato Dec., Ex. D) and was operating on severe losses for the years immediately preceding and following the sale, with no hope of remedying this dire financial situation. *See* Lazzara Dec., Exs. N-P. Where, as here, Defendant's purchase of the Colts Neck Property Mortgage with CHT funds was made with actual intent to hinder, delay, and/or defraud CHT's creditors, "it is not necessary to show that [CHT] was insolvent for the conveyance to be voidable as fraudulent." *In re Vaniman Int'l, Inc.*, 22 B.R. 166, 185 (Bankr. E.D.N.Y. 1982); *see also Nisselson,* 376 B.R. at 402. However, the financial hardships of both Parmar and CHT at the time of the transfer and the existence of legitimate creditors weigh in favor of finding an actual fraudulent conveyance.

(v) The existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (vi) The general chronology of the events and transactions under inquiry

Parmar has demonstrated a pattern and practice of using and diverting Debtor funds to acquire assets for the benefit of himself or those close to him. For instance, as alleged in the Second Amended Complaint, Parmar and the other Board Member Defendants used money stolen from the Debtors to fund purchases of other real property, including the River Terrace Property, Broad Street Property and Riverside Boulevard Property, by the Parmar Laundering Entities. *See* Amato Dec., Ex. A at § VIII. In fact, in a related adversary proceeding titled Howard M. Ehrenberg in his Capacity as Liquidating Trustee of Orion

17

<u>Healthcorp, Inc., et. al. v. Elena Sartison</u>, Adv. Proc. No. 20-08051 (AST), this Court entered judgment against defendant 2 River Terrace Apartment 12J, LLC on the Liquidating Trustee's constructive fraudulent transfer claim alleged therein to avoid and recover the River Terrace Property finding, among other things, that Parmar had used CHT funds to purchase the River Terrace Property without providing fair consideration to CHT. [Doc. No. 64].

Here, Defendant has submitted no legitimate explanation for CHT's transfer of $3.8 million to Defendant, and the only plausible explanation, as supported by the e-mail correspondence and bank records, is that CHT funded Defendant's purchase of the Colts Neck Property Mortgage at Parmar's direction for the purpose of hindering, delaying and/or defrauding CHT's creditors by secreting a significant sum of cash.

**B.      Transfer Of The Colts Neck Mortgage To Defendant Was A Constructive Fraudulent Transfer Under The Bankruptcy Code And Delaware Law (Counts VI and VIII)**

In the Sixth and Eighth Causes of Action, the Liquidating Trustee seeks a finding that the transfer of the Colts Neck Property Mortgage to Defendant utilizing CHT funds was a constructive fraudulent transfer pursuant to Bankruptcy Code § 548(a)(1)(B) and/or Delaware Code §§ 1304(a)(2) and 1305(a).

Bankruptcy Code § 548(a)(1)(B) permits the Liquidating Trustee to avoid a transfer as constructively fraudulent if the debtor (1) transferred an interest in property; and (2)(a) was insolvent at the time of the transfer or became insolvent as a result thereof, (2)(b) was engaged or was about to engage in business for which the debtor's remaining property was an unreasonably small capital, or (2)(c) intended to incur or believed it would incur debts beyond its ability to pay as they matured; and (3) the debtor received less than a reasonably equivalent value in exchange for such transfer. 11 U.S.C. § 548(a)(1)(B)(i)-(ii). Delaware Code

§§ 1304(a)(2) and 1305(a) contain similar provisions to the Bankruptcy Code, requiring that the debtor made a transfer without receiving reasonably equiavelent value in exchange and (a) [w]as engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; (b) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due (*see* 6 Del. C. § 1304(a)(2)), or (c) was insolvent or became insolvent as a result of the transfer (*see* 6 Del. C. § 1305(a)). *See In re Pennysaver USA Publ'g, LLC*, 602 B.R. at 267 ("The elements to state a claim for fraudulent transfers under [the Delaware Code] are identical and mirror the elements required to state a claim for constructive fraud under Section 548(a)(1)(B).").

Under the Bankruptcy Code, "a debtor who transfers property without fair consideration is presumed to be insolvent, and the burden shifts to the transferee to rebut the presumption." *Tese-Milner v. Edidin & Assocs. (In re Operations NY LLC)*, 490 B.R. 84, 97 (Bankr. S.D.N.Y. 2013); *see also McCord*, 559 B.R. at 79-80 (applying presumption of insolvency to trustee's constructive fraudulent conveyance claim brought under the Bankruptcy Code); *Mendelsohn v. Jacobowitz (In re Jacobs)*, 394 B.R. 646, 672-73 (Bankr. E.D.N.Y. 2008) (presuming insolvency for claims under the Bankruptcy Code and New York's Debtor & Creditor Law where transfer was made without fair consideration). Similarly, under Delaware Code §§ 1304 and 1305, a transfer is presumed fraudulent if made without fair consideration. *See Renco Grp., Inc. v. MacAndrews AMG Holdings LLC*, No. 7668-VCN, 2015 Del. Ch. LEXIS 25, at *34 (Del. Ch. Jan. 29, 2015) (noting that fraudulent intent is presumed where there is an inadequate exchange); *Dodge v. Wilmington Tr. Co.*, No. 1257-K, 1995 Del. Ch. LEXIS 26, at *13 (Del. Ch. Feb. 3, 1995) (Sections "1304 and 1305 presume

fraud if the transfer was made without fair consideration."); *News Journal Co. v. Little Caesars of Del.*, No. 1999-04-241, 2000 Del. C.P. LEXIS 77, at *9 (Del. Common Pleas Dec. 20, 2000) ("The claim made under § 1305 creates a presumption of fraudulence if the transfer is made without fair consideration.").

Here, the Liquidating Trustee has established that CHT did not receive fair consideration, let alone any consideration, for the transfer of $3.8 million to Deutsche Bank to fund Defendant's purchase of the Colts Neck Mortgage. *See* Lazzara Dec., ¶ 21. Defendant was created solely to hold the Colts Neck Property Mortgage, purportedly on behalf of Petrozza and/or Vardi, yet CHT's books and records confirm that Defendant had no business dealings with CHT, was owed no debt by CHT, and no antecedent debt was satisfied as a result of the transfer. *Id.* Accordingly, because the Liquidating Trustee has met his burden of establishing that fair consideration to CHT in exchange for funding Defendant's purchase of the Colts Neck Property Mortgage was wholly lacking, the Liquidating Trustee is entitled to a presumption that CHT was insolvent or rendered insolvent as a result of the transfer under Bankruptcy Code § 548(a)(1)(B) and that the transfer was fraudulent under Delaware Code §§ 1304(a)(2) and 1305(a). As explained above, the fraudulent nature of the transfer, as well as CHT's insolvency, is buttressed by the documentary evidence submitted on this Motion. *See supra*, § II.A.

## III.   The Court Should Declare the Colts Neck Property Mortgage Property Of The Debtors' Estates Ordering Turnover To The Liquidating Trustee

In the First Cause of Action, the Liquidating Trustee seeks turnover of the Colts Neck Property Mortgage, which was purchased with monies that rightfully belong to Debtors, to the Liquidating Trustee as property of the Debtors' estates pursuant to Bankruptcy Code § 542.

The purpose of Bankruptcy Code § 542 is "to expand the trustee's power to 'bring into the estate property in which the debtor did not have a possessory interest at the time of the bankruptcy proceedings commenced,' ensuring that a broad range of property is included in the estate." *In re Ir. Bank Resolution Corp.*, 559 B.R. 627, 643 (Bankr. Del. 2016) (quoting 5 COLLIER ON BANKRUPTCY, ¶ 542.01). "A turnover action invokes the court's most basic equitable powers to gather and manage property of the estate including authority to compel an entity to turn over property and to seek injunctive relief to protect the asset sought." *Id.* (internal citations and quotations omitted). In determining what constitutes property of the Debtors' estates under Bankruptcy Code § 541, the issue is not who has title or possession, but includes "all legal or equitable interests of the debtor in property as of the commencement of the case," *In re Community Hosp. of Rockland County*, 5 B.R. 7, 10 (Bankr. S.D.N.Y. 1979) (quoting Bankruptcy Code § 541(a)(1)), and "any interest in property that the trustee recovers" under certain provisions of the Bankruptcy Code, including § 550. 11 U.S.C. § 541(a)(3).

To support a claim for turnover, the Liquidating Trustee has the burden of proof, by a preponderance of the evidence, to establish that (1) the Colts Neck Property Mortgage constitutes property of the Debtors' estates; (2) the Colts Neck Property Mortgage is in the possession, custody or control of another entity; (3) the Colts Neck Property Mortgage is of a type the Liquidating Trustee could use in accordance with Bankruptcy Code § 363; and (4) the Colts Neck Property Mortgage is not of inconsequential value or benefit to Debtors' estates. *See Kramer v. Mahia (In re Kahn)*, No. 14-MC-1674 (PKC), 2015 U.S. Dist. LEXIS 133241, at *47-48 (E.D.N.Y. Sept. 30, 2015). The Liquidating Trustee has established all four elements.

First, the Liquidating Trustee has established that the Colts Neck Property Mortgage was purchased using CHT funds. *See* Lazzara Dec., Ex. M. The fact that monies of CHT were removed from its M&T Bank Account and converted into a mortgage does not change the fact that the Colts Neck Property Mortgage is "estate property" pursuant to Bankruptcy Code § 541 and subject to turnover. *See Geltzer v. Soshkin (In re Brizinova)*, 588 B.R. 311, 326 (Bankr. E.D.N.Y. 2018) (finding that the change in an asset's form from one type, such as real estate or shares of a corporation, to another, such as cash, should not lead to a change in whether it is part of a debtor's bankruptcy estate). Moreover, once this Court determines that the Colts Neck Property Mortgage was fraudulently transferred, it can be subject to turnover to the Liquidating Trustee. *See In re Kahn*, 2015 U.S. Dist. LEXIS 133241, at *48 (affirming bankruptcy court's grant of summary judgment on turnover claim based on its finding that the transfer of proceeds from mortgage and sale of real property was a fraudulent transfer under New York's Debtor & Creditor Law); *In re Jacobs*, 394 B.R. at 674 (granting summary judgment of turnover claim of fraudulently transferred property). Second, the Colts Neck Property Mortgage is undisputedly in the possession of Defendant, as its assignee and record owner. *See* Lazzara Dec., Ex. K. Finally, the Colts Neck Property Mortgage can be used by the Liquidating Trustee to satisfy extant claims against the Debtors' estates and, therefore, clearly has value of consequence to the Debtors' estates. Accordingly, the Liquidating Trustee has satisfied its right to a turnover of the Colts Neck Property Mortgage pursuant to Bankruptcy Code § 542.

**IV.**     <u>**A Partial Default Judgment Pursuant to Federal Rule 54(b) Is Appropriate**</u>

Rule 54(b) provides, in relevant part, that

> [w]hen an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when

> multiple parties are involved, the court may direct entry of a final
> judgment as to one or more, but fewer than all, claims or parties only
> if the court expressly determines that there is no just reason for delay.

*See* Fed. R. Civ. P. 54(b). Generally, certification under Rule 54(b) should be granted where

it serves "the interest of sound judicial administration." *Ginett v. Comput. Task Grp.*, 962 F.2d

1085, 1092 (2d Cir. 1992). The decision to enter judgment pursuant to Rule 54(b) is left to

the sound discretion of the district court. *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,

106 F.3d 11, 16 (2d Cir. 1997).

A Rule 54(b) judgment is warranted where (1) there are multiple claims or parties; (2)

the order issued is "an ultimate disposition of an individual claim"; and (3) there is "no just

reason for delay." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980); *accord Siemens*

*Westinghouse Power Corp. v. Dick Corp.*, 220 F.R.D. 232, 234 (S.D.N.Y. 2004). The Liquidating

Trustee has met all of the requirements for a Rule 54(b) judgment to avoid the Colts Neck

Property Mortgage.

Here, the Liquidating Trustee seeks a partial default judgment against Defendant on

the First and Fifth through Eighth causes of action in the Second Amended Complaint to

recover a single asset, the Colts Neck Property Mortgage. The remaining claims in the Second

Amended Complaint assert causes of action for, *inter alia*, actual and constructive fraudulent

transfers of other property, which involve different issues of fact and law separate and

independent of Plaintiff's claims as to the Colts Neck Property Mortgage. Moreover,

Defendant has defaulted and thus has not, and cannot, assert any defenses or counterclaims

to Plaintiff's claims with respect to the Colts Neck Property Mortgage. Accordingly, there is

no just reason to require these claims to be resolved simultaneously or to require the

Liquidating Trustee to await conclusion of the pending claims before enforcing judgment on

the Colts Neck Property Mortgage. *See Ginett*, 962 F.2d at 1096 ("Only those claims 'inherently inseparable' from or 'inextricably interrelated' to each other are inappropriate for Rule 54(b) certification."); *Coleman Co. v. Hlebanja*, No. 96 Civ. 1288 (MBM), 1997 U.S. Dist. LEXIS 225, *27-28 (S.D.N.Y. Jan. 15, 1997) (granting separate judgment under Rule 54(b) on defendants' counterclaims which "present[ed] different and separate issues of fact and law").

## CONCLUSION

For all of the foregoing reasons, the Liquidating Trustee respectfully requests the entry of the Order granting this Motion in its entirety and such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        August 4, 2021

THOMPSON COBURN HAHN & HESSEN LLP

By: ___/s *John P. Amato*_____
        Mark T. Power
        John P. Amato
        Joseph Orbach
        Brigitte R. Rose

488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
mpower@hahnhessen.com
jamato@hahnhessen.com
jorbach@hahnhessen.com
brose@hahnhessen.com

*Counsel to the Liquidating Trustee*