## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| Orion HealthCorp, Inc., *et al.*, | § | |
| | § | Case No. 18-71748-67-AST |
| Debtors. | § | Case No. 18-71789-AST |
| | § | Case No. 18-74545-AST |
| ———————————————— | § | |
| | § | |
| Howard M. Ehrenberg, in his capacity as | § | |
| Liquidating Trustee of Orion HealthCorp, | § | |
| Inc., *et al.*, CHT Holdco, LLC, and CC | § | |
| Capital CHT Holdco LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. Proc. No. 18-08053-AST |
| | § | |
| Parmjit Singh Parmar a/k/a Paul Parmar, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |
| ———————————————— | § | |

## DECISION AND ORDER DENYING
## MOTION TO VACATE DEFAULT JUDGMENT

This decision involves a Defendant, Aquila Alpha, LLC ("Aquila"), who, for over two

years, intentionally ignored an amended complaint that had been properly served upon it, and

took no action until after a default judgment was taken against it. Following entry of the default

judgment, Aquila then sprang into action, and, in less than fourteen days, moved to vacate the

default judgment. However, Aquila presented unavailing, and at times misleading, arguments in

support of its vacatur demand. For the reasons to follow, the request to vacate the default is

denied.

## I.  Subject Matter Jurisdiction, Adjudicatory Authority, and Venue

Pursuant to the District's standing order of automatic reference entered pursuant to 28

U.S.C. § 157(a), this Court exercises the subject matter jurisdiction vested in the U.S. District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1334(b). This Court exercises adjudicatory authority to hear and determine on a final basis this core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A, E, & H).  Venue properly lies pursuant to 28 U.S.C. § 1409.

This decision includes the Court's findings of fact and conclusions of law made pursuant to Bankruptcy Rule 7052.

## II.  Procedural Background

The following procedural facts are either undisputed by the parties or are not the basis of a good faith dispute.

On April 4, 2018, Plaintiff Howard M. Ehrenberg, in his capacity as Liquidating Trustee of multiple debtors pursuant to a confirmed plan of reorganization, filed a complaint (the "Original Complaint") [dkt item 1], thereby commencing this Adversary Proceeding. The Complaint brought multiple claims against various persons and entities, many of whom were allegedly connected to a person known as Parmjit Singh Parmar. Mr. Parmar was a principal in some or all of the Debtors in the main bankruptcy case from which this Adversary Proceeding arises, and is himself a defendant in this Adversary Proceeding.

 Aquila was not a named defendant in the Original Complaint.

On June 4, 2018, Plaintiff filed an amended complaint (the "First Amended Complaint") [dkt. item 24], adding Aquila and various other parties as defendants.[1] As to Aquila, Plaintiff's essential allegations were as follows:

---

[1] The Defendants named in the First Amended Complaint include, in addition to Aquila Alpha, LLC: Parmjit Singh Parmar (a/k/a Paul Parmar), Sotirios Zaharis, Ravi Chivukula, Pavan Bakshi, Naya Constellation Health, LLC, Alpha Cepheus, LLC, Constellation Health Investment, LLC, Constellation Health Group, LLC, Constellation Health, LLC, First United Health, LLC, Taira

that Mr. Parmar owned certain real property in Colts Neck, New Jersey, on which he built a 39,000 square foot mansion (the "Colts Neck Property");

that in early 2008, Mr. Parmar granted a mortgage against the Colts Neck Property to Deutsche Bank in the original principal amount of $23,700,000, to secure a promissory note in the same amount (the "Colts Neck Mortgage");

that none of the Debtors who filed for bankruptcy relief with this Court were obligated on the note to Deutsche Bank or liable under the Colts Neck Mortgage;

that Mr. Parmar desired to purchase the Colts Neck Mortgage from Deutsche Bank;

that Mr. Parmar formed Aquila in 2016 to acquire ownership of the Colts Neck Mortgage;

that Mr. Parmar and co-Defendant Sotiros Zaharis, then the chief financial officer of one of Constellation Healthcare Technology, Inc. ("CHT"), one of the Debtors, acting through another Parmar associate, Tomer Vardi, directed the transfer of $3.8 million from Debtor CHT's M&T Bank Account to Deutsche Bank in order to fund Aquila's purchase of the Colts Neck Mortgage;

that Parmar retained possession of the Colts Neck Property and continued to use it as his residence; and

that CHT received no consideration in return for the $3.8 million in funds and no antecedent debt was satisfied as a result of the transfer.

(*See* First Amended Complaint).

---

no Kiyomori LLC, Blue Mountain Healthcare, LLC, CC Capital CHT Holdco LLC, CHT Holdco LLC, PBPP Partners LLC, Axis Medical Services, LLC, Vega Advanced Care LLC, Pulsar Advance Care LLC, Lexington Landmark Services LLC, MYMSMD LLC, PPSR Partners, LLC, AAKB Investments Limited, Destra Targeted Income Unit Investment Trust, on behalf of unitholders, a Delaware Statutory Trust, United States of America, 2 River Terrace Apartment 12J, LLC, Dioskouroi Kastor Polydeuces, LLC, 21B One River Park LLC, Aquila Alshain LLC, Ranga Bhoomi LLC, Harmohan Parmar (a/k/a Harry Parmar), Kiran Sharma, The Red Fronted Macaw Trust, Young Conaway Stargatt & Taylor, LLP (in its capacity as Escrow Agent), Blue Cross Blue Shield of South Carolina, Honorable Trinidad Navarro, Insurance Commissioner of the State of Delaware, in his capacity as Receiver, and John Does 1 through 100 inclusive.

Plaintiff sought recovery of the Colts Neck Mortgage as an actual and constructively fraudulent transfer to Aquila under 11 U.S.C.[2] §§ 544, 548(a)(1)(A), (a)(1)(B) and 550, and Delaware Code §§ 1304(a)(1), (a)(2) and 1305(a), and for the turnover of the Colts Neck Mortgage pursuant to Bankruptcy Code § 542.

On June 6, 2018, Eqip Bankruptcy Services, Inc. ("Eqip"), a servicing agent acting on behalf of Plaintiff, filed an Affidavit of Service ("Affidavit of Service for First Amended Complaint") [dkt item 35], attesting that Eqip caused service of the First Amended Complaint and the associated Summons upon Aquila, via delivery by U.S. mail, at the following addresses:

> Aquila Alpha LLC c/o National Registered Agents LLC
> 160 Greentree Drive Suite 101
> Dover DE  19904
>
> (the "Dover Address"), and
>
> Aquila Alpha LLC
> 3400 Route 35 South Suite 9
> Hazlet NJ   07730
>
> (the "Hazlet Address").

(Affidavit of Service for First Amended Complaint at 5.)

Aquila did not file an answer or otherwise respond to the First Amended Complaint between June 2018 and October 28, 2021.

On July 3, 2018, the Court entered an Order of Attachment (the "Attachment Order") [dkt item 47], pursuant to Articles 62 and 63 of the New York Civil Practice Law and Rules and FRCP Rule 64, in favor of Debtors and against, among others, Aquila, expressly attaching the Colts Neck Property Mortgage. Pursuant to the Attachment Order, this Court directed that, for

---

[2] Tile 11 of the United States Code is the Bankruptcy Code, and hereinafter, citations to a statutory section in title 11 shall be made to Bankruptcy Code.

purposes of securing the sum of no less than $100 million, the Sheriff's Office shall "levy upon [Defendant] within your jurisdiction at any time before final judgment upon [the Colts Neck Property Mortgage] … as subsequently assigned to [Defendant] …." (Attachment Order at 3.)

On January 14, 2021, Plaintiff filed the Second Amended Complaint. Aquila remained listed as a defendant in the Second Amended Complaint, but the Second Amended Complaint brought no new claims against Aquila.[3]

On January 21, 2021, Plaintiff filed an Affidavit of Service [dkt item 307] attesting that a copy of the Second Amended Complaint and the associated Summons had been served upon Aquila via delivering each by U.S. mail to the Dover Address and the Hazlet Address.

Aquila did not file an answer or otherwise respond to the Second Amended Complaint between January 2021 and October 28, 2021.

On August 5, 2021, Plaintiff filed its Motion for Default Judgment against Aquila, as well as a Memorandum of Law and supporting declarations with substantial documentary support [dkt items 331, 332, 333, 334, 335, 336, 337, 338, 339, 340, & 341]. Plaintiff's allegations in the First Amended Complaint against Aquila were thoroughly supported by the affidavit testimony and exhibits submitted to this Court.

On August 6, 2021, Plaintiff filed an Affidavit of Service attesting that a copy of the Motion for Default Judgment and supporting materials had been served upon Aquila, via delivery by U.S. mail at the Dover Address and the Hazlet Address [dkt item 342].

Aquila did not respond to the Motion for Default Judgment. On September 14, 2021, Plaintiff filed a Certificate of No Objection to the Motion for Default Judgment [dkt item 348].

---

[3] The Second Amended Complaint was filed in part as the result of a settlement this Court approved in this adversary that resulted in dismissal of various parties. (Order [dkt item 289] at page 6.)

On October 28, 2021, following Aquila's default and in light of the uncontested facts that had been presented by Plaintiff the Court entered an Order granting the Default Motion (the "Default Order") [dkt item 351]. Contemporaneously, the Court entered a judgment (the "Default Judgment") [dkt item 352] against Aquila, consistent with the findings and conclusions set out in the Default Order. The specific relief was granted as to Counts I and V through VIII of the Second Amended Complaint, the claims of fraudulent transfer and for turnover of the Colts Neck Mortgage. The Court notes that the types of no-consideration transfers asserted against Aquila are similar to others that this Court has resolved on the merits in this and other adversary proceedings concerning these Debtors.

On November 10, 2021, Aquila filed an Emergency Motion to Prohibit Enforcement of the Judgment and to Vacate the Default Judgment (the "Motion to Vacate") [dkt item 354]. The sole relief sought by Aquila was to vacate the Default Order and Judgment on grounds of voidness pursuant to Federal Rule of Civil Procedure ("FRCP") 60(a)(4), made applicable in adversary proceedings pursuant to Federal Rule of Bankruptcy Rule ("Bankruptcy Rule") 9024.[4]

Plaintiff filed a Memorandum of Law in Opposition to the Motion to Vacate [dkt item 359], and an Affirmation in Opposition [dkt item 360], and Aquila filed a Reply to Plaintiff's Opposition [dkt item 364].

---

[4] Because Aquila sought emergency relief, the Court conducted a telephonic status conference on November 16, 2021. At that hearing, Plaintiff noted that any delays would prejudice the estate as the Default Judgment gave Plaintiff twenty (20) days of the entry of the October 28, 2021 Default Judgment to execute a duly notarized written assignment of the Colts Neck Property Mortgage. To avoid that potential prejudice, the Court *sua sponte* exercised its discretion under Federal Rule Civ. P. 60(b) to modify the time for the Plaintiff to execute a duly notarized written assignment of the Colts Neck Property Mortgage to any time on or after December 31, 2021. An Amended Judgment to that effect was entered on March 30, 2022 [dkt item 393]. No issues concerning the Aquila Motion to Vacate are impacted by the Amended Judgment.

The Court set an evidentiary hearing on the Motion to Vacate for February 9, 2022 and required both sides to submit affidavits and other evidence in advance. Both parties filed various affirmations in support of their respective positions [dkt items 360, 369, 373, 374, 375, 376, & 377] and Motions to Strike portions of each other's evidence [dkt items 382 & 384].

On February 9, 2022, the Court held the evidentiary hearing, at which both parties appeared through counsel and presented evidence and argument. The Court stated its evidentiary rulings on the Motions to Strike on the record. Following the hearing, the Court took the matter under submission.

For the reasons to follow, the Court now denies the Motion to Vacate.

### III.  LAW

Aquila seeks relief from the Default Order and Default Judgment solely under FRCP 60(b)(4) arguing that both are void for lack of personal jurisdiction. In support of its argument, Aquila alleges that it was not properly served with the First Amended Complaint or the Second Amended Complaint or the related summonses. As a result of this failure of service, Aquila contends, the Court never obtained personal jurisdiction over Aquila, and thus the Default Order and Default Judgment are void and must be vacated. Aquila does not contend that the Default Judgment grants relief greater than that which was sought against it in the First Amended Complaint or that the relief sought in the Second Amended Complaint varies from the relief sought against it in the First Amended Complaint.

Aquila also generally cites to FRCP 55(c), made applicable to adversary proceedings pursuant to Bankruptcy Rule 7055, which provides that the court may set aside an entry of default for good cause, and it may set aside a final default judgment under FRCP 60(b); Bankruptcy Rule 7012(a) which requires that a complaint must be duly served; and Bankruptcy

Code § 105, which provides that the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. The Court declines any invitation to invoke the "necessary or appropriate" language of Bankruptcy Code § 105, as the applicable case law and federal rules dictate the result here.

FRCP 60(b)(1-6) provides the circumstances under which the court may relieve a party from an adverse final judgment or order. FRCP 60(b)(4) identifies voidness as a basis for relief from the judgment or order and is unique among the six enumerated bases for relief under FRCP 60(b) because it is not discretionary. That is, if the court determines that the subject judgment or order is void, the court must vacate the judgment or order. *Cent. Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 189 (2d Cir. 2003)(observing that "if the underlying judgment is void, it is a *per se* abuse of discretion for a district court to deny a movant's motion to vacate the judgment under [FRCP] 60(b)(4)." (quoting *Jalapeno Prop. Mgmt., LLC v. Dukas,* 265 F.3d 506, 515 (6th Cir. 2001)). Where a defendant in an adversary proceeding has not been properly served with the complaint and summons, such failure deprives the court of personal jurisdiction over that defendant and any order entered against the defendant is void. *See, e.g., Trustees of Loc. 531 Pension Fund v. Am. Indus. Gases, Inc*., 708 F. Supp. 2d 272, 275 (E.D.N.Y. 2010).

The Motion to Vacate was filed within fourteen days of entry of the Default Judgment and was thus timely. *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 179 (2d Cir. 2004)(observing that a FRCP 60(b)(4) motion "must be made 'within a reasonable time' after entry of the judgment. Courts have been exceedingly lenient in defining the term 'reasonable time,' with regard to voidness challenges. In fact, it has been oft-stated that, for all

intents and purposes, a motion to vacate a default judgment as void 'may be made at any time.'" (quoting *Beller & Keller v. Tyler*, 120 F.3d 21, 24 (2d Cir.1997) (citations omitted)).

This dispute requires that the court differentiate service of process of a complaint and summons, which is governed by Bankruptcy Rule 7004, and service of other pleadings and papers, which is governed by Bankruptcy Rule 7005. Whether service of process of a complaint and summons was properly effectuated in an adversary proceeding is determined by Bankruptcy Rule 7004(b)(3), which provides that service may be made as follows:

> Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

As such, for service of process to be proper, the documents must be mailed to (i) an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process, and (ii) if the agent is authorized by a statute to receive service and the statute requires it, by mailing a copy to the defendant. These two steps must have been satisfied here for this Court to have acquired personal jurisdiction over Aquila. The Court has concluded these two steps were satisfied as to the First Amended Complaint.

## IV.  DISCUSSION

### A.  Aquila received service of process of the
### First Amended Complaint and the associated Summons.

Aquila contends that Plaintiff did not effectuate service of process of the First Amended Complaint and associated summons because the two addresses used for mailing and delivery—the Hazlet Address and the Dover Address—were incorrect. Aquila's arguments about improper service are without merit.

*The Dover Address.* Aquila is a Delaware Limited Liability Company. Delaware law requires that every entity incorporated or formed in that state must designate an agent for service of process. Aquila conceded that it designated National Registered Agents, LLC ("NRAI") as its registered agent. However, Aquila argues that NRAI moved its office from the Dover Address, being 160 Greentree Drive Suite 101 Dover DE 19904, prior to June 2018, and that Plaintiff used an old address for NRAI. To support its contention, Aquila produced an unauthenticated, undated "screenshot" print-out from the website of the Delaware Department of State, Division of Corporations, which listed NRAI's mailing address as 1209 Orange Street, Wilmington, Delaware 19801 (the "Wilmington Address")—intending to give the superficial impression that the Dover Address used for NRAI on June 6, 2018 was incorrect.

However, Plaintiff produced a Delaware Certificate of Change of Address of Registered Agent that showed that the Dover address was, in fact, NRAI's address until March 16, 2020, nearly two years after the First Amended Complaint and summons were served. The Wilmington Address only became effective long after Aquila had received service of process. Despite this clear evidence, Aquila continued to assert that NRAI had moved from the Dover Address prior to June 6, 2018.

As of June 6, 2018—the date that Plaintiff mailed the First Amended Complaint and summons—the Dover Address was the correct address of NRAI. Aquila's challenge concerning use of the Dover Address for service of process is meritless.

*The Hazlet Address.* Aquila also contends that the Hazlet Address, the second required step of "also mailing a copy to the defendant," is not the address at which Aquila is located for any purpose. This contention is also without merit.

The evidence admitted at trial clearly demonstrates that Aquila in fact was located at the Hazlet Address in June 2018. Plaintiff introduced bank records establishing that Aquila opened and maintained a business checking account at Manufacturer's Trust Bank ("M&T") in 2016, with Aquila's address on that business account listed as the Hazlet Address. Email correspondence in the record shows that, shortly after Aquila was created in 2016, Mr. Parmar, on behalf of Aquila, specified to M&T Bank that the Hazlet Address be used as Aquila's address.[5]

Aquila's only response to this evidence was the testimony of John Petrozza. Mr. Petrozza represented that he was a member of JTP-078 Trust, which in turn was the owner of Aquila (Petrozza Affidavit [dkt item 376] at 1). He also represented that he is owner of Aquila (Petrozza Affidavit at 5). In addition, he attested to facts establishing that he is a long-time business associate of Mr. Parmar, dating back to at least 2013 when Mr. Petrozza transferred $4 million to CHT, a Parmar-related entity (Petrozza Affidavit at 2-3). Whatever Mr. Petrozza's exact role was or is now in Aquila, he was presented by Aquila at the hearing as its representative.

At the hearing, Mr. Petrozza testified to his personal ignorance about the Hazlet address. However, despite insisting that the Hazlet Address was not Aquila's address, Aquila failed to provide any evidence of the address from which Aquila operated or conducted business in or around June 2018. For example, it produced no bank statements, business correspondence, an office lease, or tax records that might establish a different business address for Aquila. The Court does not find Mr. Petrozza's asserted ignorance of Aquila's business address in 2018 to be

---

[5] The Hazlet Address also has been used by other Parmar-related defendants in this Adversary Proceeding, including by Ravi Chivukula, Ranga Bhoomi LLC., and MYMSMD LLC.

credible nor probative of where Aquila was actually located at the relevant time. Ignorance of a fact is not evidence of the falsity of a fact.

Mr. Petrozza's testimony, as a whole, lacked credibility. For example, at the hearing he also claimed ignorance of attorney Charles Simpson who has represented Mr. Parmar and numerous Parmar-related entities in this Adversary Proceeding. Yet, Mr. Petrozza acknowledged in his Affidavit that Mr. Simpson had filed a pleading on June 24, 2020, stating that he did not represent Aquila, conveniently ignoring that, on July 23, 2018, Mr. Simpson had filed a motion [dkt item 63] seeking to stay this entire adversary proceeding in favor of Mr. Parmar's criminal proceedings—a motion in which Mr. Simpson stated that he represented Aquila among other persons and entities. In addition, when responding to questions under cross-examination, Mr. Petrozza often engaged in deflection and obfuscation, complaining about the questions he was being asked and attempting to belittle the examining attorney, rather than simply answering the questions directly.

Accordingly, the Court finds that Plaintiff properly effectuated Bankruptcy Rule 7004 service of process of the First Amended Complaint and summons upon Aquila by the mailing and delivery of same to Aquila at the Hazlet Address and to Aquila's agent, NRAI, at the Dover Address. Further, the Court concludes that, through this proper service of process, the Court obtained personal jurisdiction over Aquila.

### B. Aquila was not entitled to service of process of the Second Amended Complaint and the associated Summons.

Aquila also contends that it was entitled to service of process of the Second Amended Complaint and related summons but was never so served. As a result of this failure of service of process, Aquila argues, this Court lacks personal jurisdiction over it. However, as already explained, the Court obtained personal jurisdiction over Aquila via proper Bankruptcy Rule 7004

service of the First Amended Complaint. Personal jurisdiction need not be obtained anew each time an amendment of the complaint is served.

Further, even if Aquila was entitled to Bankruptcy Rule 7004 service of process of the Second Amended Complaint Bankruptcy but was not properly served, the result would not be a failure of personal jurisdiction over Aquila; it would be that the Second Amended Complaint would not operate to supersede the First Amended Complaint as to Aquila, and that the Plaintiff would be limited to recovery sought in the First Amended Complaint. *See Finkel v. Hall-Mark Elec. Supplies Corp.*, 2007 WL 3401747, at * 3 (E.D.N.Y. Oct. 21, 2009).

Bankruptcy Rule 7005, which incorporates FRCP 5, governs service of pleadings and papers other than a summons and complaint. Where, as here, a party has received service of process of a complaint and is default for failing to appear, no service of pleadings or other papers is required under FRCP 5(a)(2) unless the pleading asserts a new claim for relief against that party; in such a circumstance, then FRCP 5 service is required, even on a defaulting party. *Id.*

Here, at the time the Second Amended Complaint was filed in January 2021, Aquila had long-since failed to appear for purposes of FRCP 5(a)(2) by not having responded to the First Amended Complaint. *Allstate Ins. Co. v. Yadgarov, et al.*, 2014 WL 860019, at *6 (E.D.N.Y. Mar. 5, 2014)("For the purposes of FRCP 5(a)(2), a party has failed to appear if it does not appear within the time proscribed for answering or otherwise responding to the complaint; no entry of default by the clerk is required." (citing *Cutting v. Town of Allenstown,* 936 F.2d 18, 21 (1st Cir.1991) and *MacIntyre v. JP Morgan Chase, Nat'l Ass'n,* 2014 WL 128032, at *4 (D. Colo. Jan. 14, 2014)). The fact that, as of January 2021, the Court had not yet formally adjudicated Aquila as being in default is not relevant; a court need not have formally adjudicated default for FRCP 5(a)(2) to be triggered. *See id.* (citing *MacIntyre* and James W. Moore, et al., 3

Moore's Federal Practice § 15:17[3] at 80–81 (3d ed. 2013). Moreover, the Second Amended Complaint did not bring any new claims for relief against Aquila; it merely reiterated the claims made in the First Amended Complaint, to which Aquila never responded. As such, Aquila was not entitled to service of the Second Amended Complaint under FRCP 5(a)(2).

The Court makes two additional observations. First, even though Aquila was not entitled to service of the Second Amended Complaint, Plaintiff nevertheless mailed a copy of it to Aquila at the Hazlet Address as well as to the Dover Address. However, by January 2021, the Dover Address was no longer the correct address for NRAI, but the Hazlet Address still was.

Second, the Second Amended Complaint is the operative complaint as to Aquila because it superseded the First Amended Complaint and it adds no new claims against Aquila. Aquila suffered no due process deprivation by the Second Amended Complaint superseding the First Amended Complaint and it did receive FRCP 5 service. The Default Order and Default Judgment, determining that Aquila was in default of the Second Amended Complaint and rendering default judgment for Plaintiff, are not erroneous, void, or otherwise requiring vacatur.

### C.  Aquila received FRCP 5 service of the Default Motion.

Last, Aquila contends that vacatur is required because Aquila was deprived of due process notice regarding the Default Motion. However, the record establishes that service of the Motion for Default Judgment was properly made. The Affidavit of Service filed on August 6, 2021, states that the Default Motion was mailed and delivered to Aquila at the Hazlet Address and the Dover Address. Again, Aquila does not challenge the representation of mailing and

delivery in the Affidavit of Service—only that the addresses were not correct. This Court is only considering mailing to the Hazlet Address, as the Dover Address was incorrect in August 2021.

Again, Bankruptcy Rule 7005, and therefore FRCP 5, governs service of the Default Motion as a pleading or other paper. FRCP 5(b)(2)(C) provides that service of a paper may be made by "mailing it to the person's last known address—in which event service is complete upon mailing."

Here, it is uncontested that the Default Motion was mailed to the Hazlet Address, the last known business addresses for Aquila. The record before this Court is clear that the Hazlet Address was where Aquila had its last known address as of August 2021, and Aquila has failed to establish that the Hazlet Address was not correct as of August 2021. In fact, as will be further discussed, Aquila had the opportunity to correct the record in this Adversary Proceeding as to where it was located but failed to do so. Not only did Aquila receive service of process in June 2018, but its representative, Mr. Petrozza, actually participated in this Adversary Proceeding in July 2020.

### D.  The Three-Factor Test to Set Aside a Default Judgment

Aquila vaguely noted in its Reply to Plaintiff's opposition to the Motion to Vacate that pursuant to Bankruptcy Rule 7055, a court may aside an entry of default for good cause, and it may set aside a final default judgment under FRCP 60(b). Plaintiff, in his Objection to the Motion to Vacate, argues that vacatur is not warranted under the Second Circuit's three-factor test for analyzing a motion to vacate a default judgment. That test calls upon a court to consider: (1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the non-defaulting party prejudice. *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d

at 166; *SEC v. McNulty,* 137 F.3d 732, 738 (2d Cir. 1998). Plaintiff makes this argument in the alternative, arguing principally that the three-factor test does not apply to a FRCP 60(b)(4) motion. In the event that the Court were to construe the Aquila Motion to Vacate as requesting relief under any other subsection of FRCP 60(b), where the three-factor test does apply, Plaintiff contends that vacatur is not appropriate. Plaintiff is correct.

As a threshold matter, Plaintiff is correct about the inapplicability of the three-factor test when the motion to vacate is solely made under FRCP 60(b)(4). *Vega v. Trinity Realty Corp., et al.,* 2021 WL 738693, at \*5–6 (S.D.N.Y. Feb. 24, 2021); *Global Gold Mining, LLC v. Ayvazian*, 983 F. Supp. 2d 378, 387 (S.D.N.Y. 2013), *aff'd in part, modified in part sub nom. Global Gold Mining, LLC v. Ayvazian*, 612 F. App'x 11 (2d Cir. 2015) (observing that "[t]he Second Circuit has established a three-factor test that guides district courts' broad discretion in deciding motions to vacate default judgments *outside the context* of [FRCP] 60(b)(4)." (emphasis added)). As the *Vega* court explained in detail:

> [M]otions to vacate a judgment for voidness are "unique" because they present a question of law, and the choice to grant relief is not left to the district court's discretion–either the judgment is void or it is not. *Irvin [v. Harris]*, 944 F.3d [63,] 68 [(2d Cir. 2019)] (internal quotation marks omitted). Consistent with that fact, courts have made clear that these three prudential factors are not relevant to such motions. *See, e.g., id.* (explaining that a meritorious defense is not necessary under [FRCP] 60(b)(4)); *Doe v. Constant*, 354 F. App'x 543, 546 (2d Cir. 2009) (denying a request to vacate a default judgment for lack of personal jurisdiction without considering these factors); *Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*, No. 17-cv-5553 (LGS) (GWG), 2020 WL 4497160, at \*5 (S.D.N.Y. Aug. 5, 2020) . . .

*Vega v. Trinity Realty Corp.,* 2021 WL 738693, at \*6.

However, to the extent that Aquila's pleadings could be construed as requesting relief under FRCP 59 or any other subsection of FRCP 60(b), the Court considers the three-factor test and concludes that the Motion to Vacate should still be denied.

i.      *Aquila's default was willful.*

First, it is clear that the default was willful. Since July 2018, Aquila has failed to file an answer or otherwise respond to the claims made against it in this matter, despite having received proper service of process of the First Amended Complaint and associated summons at two locations, despite having been served with the Second Amended Complaint and associated summons at its place of business, and despite having been served with the Default Motion and substantial supporting documents at its place of business. It was only after the Default Order and Default Judgment were entered that Aquila somehow and suddenly quickly chose to appear in the Adversary Proceeding, and, then, to insist that it had never received the various papers.

Moreover, the willfulness of Aquila's default is also shown by the fact that Mr. Petrozza had long-been been actually aware of this Adversary Proceeding. On July 21, 2020, over a year before the default was granted, Mr. Petrozza personally filed an objection to a proposed Rule 9019 settlement in this Adversary Proceeding attaching a hand-signed cover letter, in which he characterized the document as "my attached opposition" [dkt item 287].  In that Objection, he included the full Adversary Proceeding caption, which included the name of "Aquila Alpha LLC." He admitted at the February 9, 2022 hearing that he wrote at least a portion of the objection himself, then hand-signed the pleading, representing the statements therein as his own.

Mr. Petrozza further testified at the hearing that he filed this Objection to get himself "a seat at the table," believing that he or another entity of his was owed millions of dollars. His claim that he was not aware of this Adversary Proceeding is not credible, and Aquila's failure to respond to the First Amended Complaint was not an inadvertent mistake or a result of confusion. Even in the face of the July 2018 Attachment Order, Aquila selectively decided how and when it would participate in the case, and for nearly three years, it chose to ignore it.

ii.     *Aquila offers no evidence of a meritorious defense.*

Second, Aquila offers no evidence of a meritorious defense. While Aquila insists that the Trustee cannot prevail on its fraudulent transfer and turnover claims, Aquila fails to provide, or even allege, credible facts in support of a meritorious defense. *New York v. Green*, 420 F.3d 99, 109 (2d Cir. 2005)(quoting *SEC v. McNulty,* 137 F.3d at 740)(providing that "[i]n order to make a sufficient showing of a meritorious defense . . . the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense.").

Aquila asserts that the 2016 transfer of the Colts Neck Mortgage by Deutsche Bank to Aquila, funded by $3.8 million paid by CHT, was supported by adequate consideration. Aquila alleges that it provided consideration for the 2016 transfer because Mr. Petrozza—not by Aquila— made a $4 million equity investment made in 2013 in Constellation Health Investment LLC ("CHI"). This assertion is problematic in numerous respects. First, any equity investment was made in CHI an entirely different entity than the CHT entity that paid for the transfer of the Colts Neck Mortgage. Second, Aquila introduced no documentary evidence of this purported investment. Third, it would have been Mr. Petrozza who would have provided value, not the Aquila entity which did not even exist in 2013. Mr. Petrozza's purported equity investment in CHI, a different entity than CHT, would not establish the antecedent debt required to establish value under the constructive fraud provision of Bankruptcy Code § 548.

Aquila further alleges, again without any documentary evidence, that Mr. Parmar agreed to secure Mr. Petrozza's investment in the CHI entity.  Again, even if true,  Mr. Parmar's purported promise to secure Mr. Petrozza's equity investment in CHI does not establish a debt

owed by CHT to Aquila or value for the transfer of the Colts Neck Mortgage to Aquila funded by CHT.

Finally, Aquila claims that the statute of limitations provides a complete defense, arguing that the Second Amended Complaint cannot be prosecuted against Aquila because it cannot "relate back" to the First Amended Complaint, and that the Plaintiff's claims were barred when the Second Amended Complaint was filed. However, this defense rests solely on the incorrect assertion that the First Amended Complaint is not effective as to Aquila.

*iii.    Vacatur will prejudice Plaintiff.*

Third, vacatur will prejudice Plaintiff if the Default Judgment were set aside. While some delay is inevitable when a motion to vacate a default judgment is granted, delay alone is not a sufficient basis for establishing prejudice for purposes of FRCP 60(b). *New York v. Green*, 420 F.3d at 109. However, where delay "may thwart plaintiff's recover or remedy . . . [or] may result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion," such circumstances may establish prejudice. *Id.* at 110.

Here, the Court has concerns about the statute of limitations impacting the bankruptcy estate in its efforts to recover assets of the benefit of creditors. As Plaintiff explained in its Opposition to the Motion to Vacate and at the hearing, there would be significant prejudice worked upon Plaintiff by permitting outstanding taxes owed on the Colts Neck Property to continue to accrue, or even more problematically, for a tax lien foreclosure to be commenced. In addition, as articulated by Plaintiff at the hearing, the risk to the estate's ability to recover is jeopardized by the passage of time. State foreclosure law can be complicated and the Colts Neck Mortgage has already been in default for several years. Sophisticated foreclosure defendants

might seek to use the passage of time as the basis for a defense to defeat the enforcement of the Colts Neck Mortgage.

For these reasons, the three-factor test does not support granting the Motion to Vacate.

**V. CONCLUSION**

For the reasons that the Court has set forth above, the Motion to Vacate is DENIED.



**Dated: March 31, 2022**
    **Central Islip, New York**

                              **Alan S. Trust**
           **Chief United States Bankruptcy Judge**