UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Orion HealthCorp, Inc. *et al.,*<br><br>Debtors. | Chapter 11<br>Case Nos. 18-71748-67 (AST)<br>Case No. 18-71789 (AST)<br>Case No. 18-74545 (AST)<br>(Jointly Administered) |
| Howard M. Ehrenberg in his capacity as Liquidating Trustee of Orion Healthcorp, Inc., et al., CHT Holdco, LLC, and CC Capital CHT Holdco LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Parmjit Singh Parmar (a/k/a Paul Parmar), *et al.*<br><br>Defendants. | Adv. Pro. No. 18-08053 (AST) |

## DECISION AND ORDER GRANTING CHT HOLDCO, LLC AND
## CC CAPITAL CHT HOLDCO LLC MOTION TO DISMISS COUNTERCLAIMS

Pending before the Court is the motion (the "Motion") filed on behalf of plaintiffs, CHT Holdco LLC and CC Capital CHT Holdco LLC ("Corporate Plaintiffs"), to dismiss the counterclaims asserted by defendants in their answer to the second amended complaint in this adversary proceeding (the "Second Answer" in the "Adversary Proceeding"). The defendants who filed the counterclaims at issue are the following non-debtor entities: Constellation Health LLC; Constellation Health Investment LLC; First United Health, LLC; Naya Constellation Health LLC; Vega Advanced Care LLC; Pulsar Advance Care LLC; Lexington Landmark Services LLC; 2 River Terrace Apartment 12J, LLC; 21B One River Park LLC; Aquila Alshain LLC; Ranga Bhoomi LLC; PPSR Partners, LLC; Taira no Kiyomori LLC; Axis Medical Services, LLC; and The Red Fronted Macaw Trust (collectively, the "Parmar Entities").

The counterclaims of the Parmar Entities include a first counterclaim for fraud in the

inducement/fraudulent misrepresentation and a second counterclaim for breach of fiduciary duty (collectively, the "Counterclaims"). For the reasons to follow, the Motion is granted and the Counterclaims are dismissed with prejudice.

*Procedural and Factual Background*

A. **Adversary Proceeding**

The parties of this Adversary Proceeding have been engaged in contentious litigation before this Court for a long period of time, as well as in other forums, concerning the matters subject of this Adversary Proceeding and related issues.

The Adversary Proceeding was commenced on April 4, 2018 by multiple chapter 11 debtors ("Debtors").[1] Only some of the Parmar Entities were initially named as defendants in the original complaint.

Debtors filed an amended complaint on June 4, 2018 (the "First Amended Complaint") [dkt. item 24]. All Parmar Entities were named as defendants in the First Amended Complaint. Corporate Plaintiffs were named as defendants in that amended complaint.

On July 10, 2018, Parmar Entities filed their first answer (the "First Answer") to the First Amended Complaint and some asserted general crossclaims (the "First Answer Crossclaims") for monetary damages against Corporate Plaintiffs (as defendants at the time) [dkt. item 51]. The only Parmar Entities who were crossclaim plaintiffs were First United Health, LLC, and Constellation Health LLC. *Id.*

Corporate Plaintiffs moved to dismiss the First Answer Crossclaims on July 30, 2018, and

---

[1] The original debtor/plaintiffs included, Orion HealthCorp, Inc.; Constellation Healthcare Technologies, Inc.; NEMS Acquisition, LLC; Northeast Medical Solutions, LLC; NEMS West Virginia, LLC; Physicians Practice Plus, LLC; Physicians Practice Plus Holdings, LLC; Medical Billing Services, Inc.; Rand Medical Billing, Inc.; RMI Physician Services Corporation; Western Skies Practice Management, Inc.; Integrated Physician Solutions, Inc.; NYNM Acquisition, LLC; Northstar FHA, LLC; Northstar First Health, LLC; Vachette Business Services, LTD.; MDRX Medical Billing, LLC; Vega Medical Professionals, LLC; Allegiance Consulting Associates, LLC; Allegiance Billing & Consulting, LLC; Phoenix Health, LLC.

2

argued that the First Answer Crossclaims were precluded by the Releases (defined below), failed to state a claim under Federal Rule 12(b)(6), did not adequately state a claim for fraud under Federal Rule 9(b), and that those first answer crossclaim plaintiffs lacked standing under Federal Rule 12(b)(1) (the "Motion to Dismiss First Answer Crossclaims") [dkt. items 68-70]. Parmar Entities opposed the Motion to Dismiss First Answer Crossclaims [dkt. item 76].

On August 15, 2018, Corporate Plaintiffs (as defendants to the Adversary Proceeding) filed an answer to the first amended complaint and asserted crossclaims and counterclaims [dkt. item 89]. Those claims included counts for common law fraud, aiding and abetting fraud, fraudulent inducement, state and federal securities fraud violations, state and federal control person liability, breach of contract, indemnification, foreclosure of membership interests, unjust enrichment, replevin, civil conspiracy, conversion, constructive trust, and a declaratory judgment. Some of those claims were asserted against some of the Parmar Entities and defendant Parmjit Singh Parmar (a/k/a Paul Parmar) ("Parmar") himself.

On August 29, 2018, Parmar and Parmar Entities responded by filing an answer to the counterclaims and crossclaims asserted against them by Corporate Plaintiffs (as defendants) [dkt. item 116]. No additional crossclaims or counterclaims were asserted against Corporate Plaintiffs by Parmar Entities at that time. *Id.*

On December 7, 2018, this Court converted the Motion to Dismiss First Answer Crossclaims to one for summary judgment and set forth a briefing schedule [dkt. item 165].

On January 11, 2019, Parmar Entities moved to voluntarily dismiss the First Answer Crossclaims without prejudice "after determining that they will not be able to fully comply with the Bankruptcy Court's Order relating to disclosure of documentary evidence and testimony during the pendency of related and ongoing criminal proceedings" pending in a New Jersey federal district

3

court action involving Parmar[2] [dkt. item 176]. To date and based upon the information provided by the parties, the criminal trial of Parmar has yet to take place.[3]

Over the course of this litigation, multiple other defendants settled and/or were dismissed from this Adversary Proceeding.

On January 14, 2021, Howard M. Ehrenberg in his capacity as Liquidating Trustee of Orion Healthcorp, Inc., et al. (the "Liquidating Trustee"),[4] filed the second amended complaint (the "Second Amended Complaint") [dkt. item 303]. Corporate Plaintiffs were realigned as plaintiffs in this action for the first time in the Second Amended Complaint. Parmar Entities remained named as defendants.

On June 2, 2023, the Liquidating Trustee moved for a default judgment against Parmar Entities [dkt. item 489].

On July 26, 2023, new counsel for Parmar Entities opposed the default motion and attached the proposed answer to the Second Amended Complaint with counterclaims as an exhibit [dkt. items 505-508].

On December 13, 2023, the Court entered an order denying the default motion and directed Parmar Entities to file and serve a response to the Second Amended Complaint by no later than January 4, 2024 [dkt. item 522].

On January 2, 2024, the Parmar Entities first filed their Counterclaims in their Second

---

[2] On December 13, 2018, the United States of America ("USA") commenced a criminal proceeding against Parmar under Case No. 2:18-mj-08040-LDW in the New Jersey District Court (the "Parmar Criminal Proceeding"). In the Parmar Criminal Proceeding, the USA has brought three counts of felony charges against Parmar: (1) conspiracy to commit securities fraud; (2) securities fraud; and (3) wire fraud. Parmar Entities were also parties to a civil action pending in New Jersey discussed below. The dismissal request failed to specify which action Parmar Entities were referring to.

[3] On October 28, 2024, counsel for the Liquidating Trustee filed a letter seeking an extension of the Adversary Proceeding's Scheduling Order and trial date noting that the criminal trial of Parmar is scheduled for March 10, 2025.

[4] In the main bankruptcy case, Debtors' third amended joint plan for liquidation (the "Plan") was confirmed on February 26, 2019. [dkt. item 701]. Section 6.3 of the Plan created a liquidating trust and Howard M. Ehrenberg was appointed as the Liquidating Trustee. *Id.* § 6.3.

Answer [dkt. item 525].

On February 29, 2024, Corporate Plaintiffs filed the Motion [dkt. items 548-550].

On June 9, 2024, Parmar Entities opposed the Motion (the "Opposition") [dkt. item 579].

On July 24, 2024, Corporate Plaintiffs filed a reply brief in response to the Opposition and in further support of the Motion [dkt. item 585].

On August 28, 2024, this Court issued a new trial scheduling order, setting discovery to end on December 31, 2024 and a trial to be held commencing on April 8, 2025 [dkt. item 589]. The Court entered a modified trial scheduling order on October 30, 2024, extending the end date for discovery to May 28, 2025, and the trial to September 30, 2025 [dkt. item 609].

In the Motion, brought pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure ("Federal Rules"), Corporate Plaintiffs allege that the Counterclaims should be dismissed with prejudice. Corporate Plaintiffs assert the Counterclaims are an attempt by Parmar Entities to "shift responsibility" for crimes committed by Parmar by attacking the victims of fraudulent activity, and trying to relitigate claims previously dismissed and/or voluntarily released. In particular, Corporate Plaintiffs argue that (1) the Counterclaims are barred by statute of limitations because those claims arise out of purported misrepresentations and omissions that occurred on or about January 30, 2017, and yet, the Counterclaims were not filed until January 2, 2024, (2) the Counterclaims are barred by res judicata because the allegations relate to the same facts, transactions and occurrences previously and unsuccessfully pled in the federal action in the United States District Court for the District of New Jersey *Alpha Cephus, LLC, et al. v. Chu, et al.*, Case No. 18-cv-14322 (the "NJ Action") and those claims in the NJ Action were dismissed with prejudice, (3) the Counterclaims are barred by certain Releases (defined below) executed by Parmar and Parmar Entities, (4) Parmar Entities lack standing under Federal Rule 12(b)(1) to bring

5

certain Counterclaims which are derivative claims that must be brought solely and exclusively by the Liquidating Trustee, and (5) Parmar Entities have failed to state a claim pursuant to Federal Rule 12(b)(6) for fraudulent misrepresentation .

B.  **Relevant Factual Background**[5]

In 2014, Constellation Healthcare Technologies ("CHT"), an affiliate of Debtors, consummated a "go-public" transaction, after which it was publicly traded on the London Stock Exchanges' Alternative Investments Market ("AIM").  Counterclaims ¶¶ 36, 37.  Thereafter, CHT was owned by Constellation Health, LLC ("CH"), Parmar Entities, and public shareholders.  *Id.* ¶ 37.

Beginning in January 2016, CC Capital Management, LLC ("CC Capital"), acting by and through Chinh Chu (the Senior Managing Director and Founder of CC Capital) and his business allies Truc To (the Chief Financial Officer of CHT) and Douglas Newton (the Senior Managing Director at CC Capital), began developing a plan to acquire a controlling interest in CHT and deregister CHT's stock with the AIM in a "going private" transaction.  *Id.* ¶¶ 11, 17, 18, 54. Ultimately, the transaction was designed so that CHT would become privately held with 50.4% of CHT's stock owned by CC Capital (or entities it owned and/or controlled) and 49.6% owned by the Parmar Entities through a new entity, Alpha Cepheus, LLC (the "Merger").  *Id.* ¶ 73.

The Merger was approved on November 24, 2016, with CHT Holdco, LLC purchasing CHT at a price of $2.93/share in cash, plus $0.43/share in promissory notes, for a total of

---

[5] As is required on a motion brought pursuant to Federal Rule 12(b)(6), the factual allegations in the Counterclaims, though disputed by Corporate Plaintiffs, are accepted to be true for purposes of this Motion and all reasonable inferences are drawn therefrom in favor of Parmar Entities. *V.E.C. Corp. of Delaware v. Hilliard*, 896 F. Supp. 2d 253, 255 n. 1 (S.D.N.Y. 2012).  The facts recited herein do not constitute findings of fact by this Court. *Id.*; *see also Duckhorn Wine Co. v. Duck Walk Vineyards, Inc.*, No. 13-CV-1642 (JS)(GRB), 2014 WL 2573346, at *3 (E.D.N.Y. June 9, 2014) (noting that courts are confined to the facts set forth in the four corners of pleadings on a Federal Rule 12(b)(6) dismissal motion, along with any documents attached to the motion, referenced in or integral to the motion, and matters of which judicial notice may be taken).

approximately $309.4 million for the entire company. *Id.* ¶ 189. CHT Holdco, LLC was, and still is, owned by CC Capital and Alpha Cepheus, LLC. *Id.*

On November 24, 2016, in order to facilitate the Merger, a "Voting and Support Agreement and Release of Claims" (the "Releases") was prepared and presented to all shareholders of CHT to sign. *Id.* ¶ 198. The Releases contain releases of claims which could be asserted by First United Health, LLC, Constellation Health, LLC, and Parmar (the "Releasing Parties"), and "each of their respective affiliates and each of the respective officers [and] directors" against CHT and CHT Holdco, LLC (the "Released Parties") from "any and all" claims, counterclaims or the like, that the "Releasing Parties, or any of them, had, has or may have had at any time in the past or that may arise in the future, against the Released Parties, or any of them, for or by reason of any matter, cause or thing whatsoever occurring at any time at or prior to the Closing with respect to [CHT], the shares of Common Stock, or the Merger." Releases § 4(d). The Merger closed on January 30, 2017. Counterclaims ¶¶ 67, 242.

## C. NJ Action

On September 26, 2018, after asserting the First Answer Crossclaims in the Adversary Proceeding, Parmar and several of Parmar Entities filed the NJ Action against Corporate Plaintiffs and others. The NJ Action involved two counts of securities fraud, six racketeering claims and two claims for violations of the Stored Communications Act based upon factual allegations relating to the Merger.

On May 10, 2019, Chinh Chu and Douglas Newton moved to dismiss the NJ Action pursuant to Federal Rule 12(b)(6). That same day, Truc To filed a memorandum joining in the motion to dismiss the NJ Action.

On August 12, 2019, Parmar and the Parmar Entities involved in the NJ Action filed

7

opposition to the motion to dismiss.

On September 20, 2019, reply briefs in response to the opposition and in further support of the motion to dismiss were filed on behalf of Chinh Chu and Douglas Newton, and Truc To.

On December 20, 2019, District Judge Madeline Cox Arleo ("Judge Arleo") issued an opinion and order (the "NJ Decision") which dismissed the NJ Action with prejudice, including the securities fraud claims.

*Legal Standards*

**Federal Rule 12(b)(6) Standard**

Under Federal Rule 12(b)(6), made applicable to the Adversary Proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), a party may seek to dismiss a complaint "for failure to state a claim for relief upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The movant bears the burden to show that he is entitled to dismissal of the claims. *Muhammad v. New York City Transit Auth.*, 450 F. Supp. 2d 198, 202 (E.D.N.Y. 2006).

The question on a Federal Rule 12(b)(6) motion is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995); *Pereira v. Frenkel Benefits, LLC (In re Moyer Grp., Inc.)*, 586 B.R. 401, 407 (Bankr. S.D.N.Y. 2018); *Margiotta v. Kaye*, 283 F. Supp. 2d 857, 862 (E.D.N.Y. 2003). The purpose of a Federal Rule 12(b)(6) motion "is to assess the legal feasibility of the [pleading], not to weigh the evidence which the proponent offers or intends to offer." *Citibank, N.A. v. K-H Corp.*, 745 F. Supp. 899, 902 (S.D.N.Y. 1990). Accordingly, the courts must construe all reasonable inferences drawn from the pleading in favor of the non-movant on a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555—56 (2007); *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021); *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293,

605 (2d Cir. 2021) ("When a plaintiff is the movant, courts must accept all factual allegations in the answer and draw all reasonable inferences in favor of the defendants, who are the non-movants in that scenario."). .

To survive a motion to dismiss, the pleading at issue must contain sufficient factual matter that, when accepted as true, states a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted); *Twombly*, 550 U.S. at 570.  A claim has facial plausibility when it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*  Courts will not dismiss a claim under Federal Rule 12(b)(6) unless it appears beyond doubt that no set of facts can support the claim that would entitle the party to the relief being sought. *45 John Lofts v. Meridian Cap. Grp. LLC (In re John Lofts, LLC)*, 599 B.R. 730, 739 (Bankr. S.D.N.Y. 2019) (citing *Twombly*, 550 U.S. at 555).

In addition to the facts alleged in the pleading at issue, the Court may also consider documents attached to such pleading as exhibits, documents incorporated by reference in the pleading, and matters of which a court may take judicial notice. *Zucker*, 6 F.4th at 473; *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  Where a document is not incorporated by reference, the Court may nevertheless consider it where the pleading "relies heavily upon its terms and effect," thereby rendering the document "integral" to the pleading. *DiFolco*, 622 F.3d at 111.

As mentioned above, the facts relevant for the Court to consider when deciding the Motion are those alleged by Parmar Entities in the Counterclaims and viewed in the light most favorable to Parmar Entities.  The Court may also consider the Releases, albeit not being attached as an exhibit to the Counterclaims.  The Releases are referenced in the factual allegations of the Counterclaims and are also integral to the Counterclaims.  The Court may also take notice of the

NJ Decision and the docket of the NJ Action. *See Simeone v. T. Marzetti Co.*, No. 21-CV-9111 (KMK), 2023 WL 2665444, at *2 (S.D.N.Y. Mar. 28, 2023) (citing *Dixon v. von Blanckensee*, 994 F.3d 95, 103 n.6 (2d Cir. 2021) and *Coggins v. Cnty. of Nassau*, No. 07-CV-3624, 2008 WL 2522501, at **6–7 (E.D.N.Y. June 20, 2008)); *see also Tamar v. Mind C.T.I., Ltd.*, 723 F. Supp. 2d 546, 554 (S.D.N.Y. 2010) ("[D]ocket sheets are public records of which the court c[an] take judicial notice.").

In the Motion, Corporate Plaintiffs assert that the Counterclaims are barred by res judicata and statute of limitations, both of which can be properly considered at the 12(b)(6) stage. *Calemine v. Gesell*, No. 06 CV 4736(SJ)(RM), 2007 WL 2973708, at *1 n.1 (E.D.N.Y. Sept. 28, 2007) (citing *Thompson v. Cnty. of Franklin,* 15 F.3d 245, 253 (2d Cir.1994) (finding the doctrine of res judicata "in no way implicates jurisdiction" and may properly be challenged "via a motion to dismiss for failure to state a claim under Rule 12(b)(6)") and *Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 162 (2d Cir.1989) (holding that when a defendant raises a statute of limitations defense in a motion to dismiss, "[s]uch a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter")); *see also TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014) ("A court may consider a res judicata defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the [underlying pleading], documents attached or incorporated therein, and materials appropriate for judicial notice."); *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n. 12 (2d Cir. 2014); *Staehr v. Hartford Fin. Servs. Grp., Inc.,* 547 F.3d 406, 425 (2d Cir. 2008)).

**Issue and Claim Preclusion Standards**

The Counterclaims fail in light of the NJ Decision, a final judgment on the merits, which

has a preclusive effect regarding Parmar Entities' ability to plead these Counterclaims.

**Claim Preclusion**

"Under the doctrine of res judicata, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Simmons v. Trans Express Inc.*, 16 F.4th 357, 360 (2d Cir. 2021) (quoting *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000)). "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

To prove claim preclusion, "a party must show that 1) the previous action involved an adjudication on the merits; 2) the previous action involved the plaintiffs or those in privity with them; and 3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (citations omitted); *Buckskin Realty Inc. v. Windmont Homeowners Ass'n, Inc. (In re Buckskin Realty Inc.)*, No. 1-13-40083-nhl, Adv. Pro. No. 15-01004, 2016 WL 55360750, at *6 (Bankr. E.D.N.Y. Sept. 23, 2016) (citing *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 171 (E.D.N.Y. 2010)). Here, the NJ Decision is a final judgment on the merits which involves the same parties (and those in privity with them). The Counterclaims here were, or at least could have been, raised in the NJ Action.

In New York, a transactional analysis approach is used to determine "whether an earlier judgment has [a] claim preclusive effect, such that once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Whitfield v. City of New York*, 96 F.4th 504, 523 (2d Cir. 2024). New York courts "analyze whether the claims turn on facts that

11

'are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Simmons*, 16 F.4th at 360 (citations omitted).

All of the plaintiffs in the NJ Action are the defendants/counterclaimants in this Adversary Proceeding. Both of the Corporate Plaintiffs were named defendants in the NJ Action. The individual corporate shareholders of the Corporate Plaintiffs were also personally named as defendants in the NJ Action. The allegations asserted against those parties in the NJ Action included claims of securities fraud, racketeering, and violations of the Stored Communications Act. The facts alleged in support of those claims of the NJ Action stem from the same operative facts and transactions subject of this Adversary Proceeding. Specifically, the NJ Action includes claims that Corporate Plaintiffs and the respective shareholders set out to fraudulently induce Parmar and some of the Parmar Entities into the Merger and signing of the Releases. The NJ Action also involved factual allegations concerning fraudulent misrepresentations of Corporate Plaintiffs and the respective shareholders, knowingly made or with reckless disregard for the truth, that various Parmer Entities relied upon when agreeing to certain provisions of the "go-private" transaction and the Merger. As plaintiffs in the NJ Action, Parmar Entities also alluded to alleged violations of the fiduciary duties committed by Corporate Plaintiffs and the respective shareholders in connection with the Merger.

The NJ Decision dismissed the securities fraud claims with prejudice. Those securities fraud claims had the same elements as a claim for fraud in the inducement/fraudulent misrepresentation. The New Jersey court added that the securities fraud claims were barred by the Releases and would be dismissed with prejudice because there was no set of different or additional factual allegations that could cure such deficiency. Judge Arleo found the Releases were integral

to the allegations of the complaint. The "Released Parties" of the Releases included CHT, CHT Holdco LLC "and each of their respective affiliates and each of the respective officers [and] directors." Judge Arleo referenced that CHT Holdco LLC and CC Capital CHT Holdco LLC (Corporate Plaintiffs here) are both subsidiaries of CC Capital and thus "affiliates" of both CHT and CHT Holdco, LLC. The Releases therefore included all claims against Corporate Plaintiffs and the respective individual officers and directors. The "Releasing Parties" (i.e., the Parmar Entities named in the NJ Action) released "any and all" claims concerning the closing or Merger.

The allegations in the NJ Action arose from the closing and the Merger. The Counterclaims here arise from the closing and the Merger. As such, Parmar Entities are precluded from pleading both the Counterclaims of fraud in the inducement/fraudulent misrepresentation and breach of fiduciary duty based upon the principles of res judicata.

**Issue Preclusion**

The Counterclaims are also barred by issue preclusion. In New York, the doctrine of issue preclusion, also known as collateral estoppel, applies if (1) the identical issue in question was actually and necessarily decided in a prior proceeding, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action. *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006); *see also De Curtis v. Ferrandina (In re Ferrandina)*, 533 B.R. 11, 23 (Bankr. E.D.N.Y. 2015). The contextual factors that courts will consider when deciding whether a party received a full and fair hearing opportunity include: "1) the nature of the forum and the importance of the claim in the prior litigation; 2) the incentive to litigate and the actual extent of litigation in the prior forum; and 3) the foreseeability of future litigation (because of its impact on the incentive to litigate in the first proceeding)." *Chartier v. Marlin Mgmt., LLC*, 202 F.3d 89, 94 (2d Cir. 2000).

Issue preclusion binds both actual parties and their privities, including those who exercise practical control over an action. *Conte v. Justice*, 996 F.2d 1398, 1402 (2d Cir. 1993). Courts look to the totality of the circumstances to determine the issue of control. *Id.* ("[A] finding of privity through control is strained where, although the theories of recovery in the prior and present actions are the same, the claims are discrete as to each plaintiff, because they did not involve the identical property.").

While not all Parmar Entities were specifically named plaintiffs in the NJ Action, there is no question that all Parmar Entities are privities of the plaintiffs in the NJ Action. Parmar Entities are all owned and controlled by Parmar either directly or through one of his affiliates. The Parmar Entities have collectively claimed to have been damaged as a result of the Merger.

Judge Arleo "necessarily decided" the claims in the NJ Action by dismissing the securities fraud claims with prejudice. Those claims which were dismissed with prejudice arose out of the same facts, transactions, and occurrences which support the Counterclaims in this Adversary Proceeding. The plaintiffs in the NJ Action (which include certain Parmar Entities) opposed the dismissal motion. As such, Parmar Entities had a full and fair opportunity to litigate the claims in the NJ Action, and indeed, did litigate those issues. Thus, the Counterclaims are also barred by issue preclusion and should be dismissed with prejudice.

**Statute of Limitations for Fraudulent Misrepresentation and Breach of Fiduciary Duty**

A claim for fraudulent misrepresentation under New York law must be commenced within either "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud or could with reasonable diligence have discovered it." CPLR § 213(8); *McGovern, LLC v. Waterscape Resort LLC (In re Waterscape Resort LLC)*, 544 B.R. 507, 516 (Bankr. S.D.N.Y. 2016).

The statute of limitations for a claim for breach of fiduciary duty under New York law is dependent on the type of relief sought. *Kaufman v. Cohen*, 307 A.D.2d 113, 122—23 (1st Dept. 2003). Where relief sought is equitable in nature, there is a six-year statute of limitation to bring the claim. *See* CPLR § 213(1); *see also Kaufman*, 307 A.D.2d at 118. However, "where suits alleging a breach of fiduciary duty seek only money damages, courts have viewed such actions as alleging 'injury to property,' to which a three-year statute of limitations applies." *Kaufman*, 307 A.D.2d at 118 (citing CPLR § 214(4)).

"A cause of action alleging breach of fiduciary duty accrues at the time of the alleged breach." *Kefalas v. Pappas*, 226 A.D.3d 757, 762—63 (2d Dept. 2024). This accrual begins regardless of whether the injured party had knowledge of the injury or wrongdoing. *Jadidian v Goldstein*, 210 A.D.3d 969, 970 (2d Dept. 2022).

**Statute of Limitations Analysis**

In response to Corporate Plaintiffs' argument that the Counterclaims are barred by the statute of limitations, Parmar Entities contend that the Counterclaims relate back to their earlier filed First Answer and First Answer Crossclaims pursuant to Federal Rule 15(c) and, thus, have been timely asserted.

The parties appear to be in agreement that the accrual date for the Counterclaims was triggered on January 30, 2017, which was the closing date of the "Merger". Thus, Parmar Entities' time to bring the Counterclaim for fraud in the inducement/fraudulent misrepresentation expired on January 30, 2023. Further, because Parmar Entities' Counterclaim for breach of fiduciary duty relates solely to monetary damages, that Counterclaim is subject to the three-year statute of limitation. The time to bring the Counterclaim for breach of fiduciary duty expired on January 30, 2020.

15

As mentioned above, the First Answer Crossclaims was filed on July 10, 2018, and asserted factual allegations concerning the closing and the Merger. However, the First Answer Crossclaims did not plead any particular cause of action against Corporate Plaintiffs (as crossclaim defendants) but rather alleged more of a contribution claim—that if a judgment was entered against Parmar Entities, Corporate Plaintiffs should too be jointly and severally liable for paying such judgment. Counterclaims ¶¶ 201-291; p. 46. Further, only two of the Parmar Entities were crossclaim plaintiffs. *Id.* p. 26. And as noted above, the Parmar Entities voluntarily dismissed the First Answer Crossclaims after they could not comply with this Court's December 7, 2018 Order converting the Corporate Plaintiffs motion to dismiss to a motion for summary judgment.

The Counterclaims[6] were filed on January 2, 2024, approximately five-and-a-half years after the First Answer Crossclaims. The problem here, as correctly asserted by Corporate Plaintiffs, is that the Counterclaims do not relate back to the First Answer Crossclaims in accordance with Federal Rule 15(c).

The Counterclaims are asserted with far greater factual detail than were the First Answer Crossclaims and are far more expansive in both time and scope. The rationale of relation back under Federal Rule 15(c) is that "a party who has been notified of litigation concerning a particular occurrence [to be] given all the notice that statutes of limitations were intended to provide," and purpose is "to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities". *Rubin v. Valicenti Advisory Servs., Inc.*, 471 F. Supp. 2d 329, 337 (W.D.N.Y. 2007) (internal quotations and citations omitted). Courts will focus on the broad, more

---

[6] On June 2, 2023, the Liquidating Trustee moved for a default judgment against the Parmar Entities. On July 26, 2023, substituted counsel for Parmar Entities opposed such motion and attached the proposed answer with counterclaims as an exhibit. The proposed answer with counterclaims was filed to the docket on January 2, 2024. Either of the foregoing dates exceed the deadline by which the Counterclaims should have been asserted on behalf of Parmar Entities.

fundamental question concerning a relation back analysis under Federal Rule 15(c), which is "whether defendants were aware that the matters giving rise to the counterclaims would be at issue in the litigation." *Id.*; *see generally Banco Para El Comercio Exterior De Cuba v. First Nat'l City Bank*, 744 F.2d 237, 243 (2d Cir. 1984). "Notice" as the term is employed in Federal Rule 15(c) serves as a "means for evaluating prejudice". *Rubin*, 471 F. Supp. 3d at 338 (internal citations omitted). "Relation back ... will be permitted unless the court finds that defendant did not have adequate notice or that the new and the existing plaintiffs did not share a sufficient identity of interest." *Cinar v. R&G Brenner Income Tax, LLC*, No. 20-CV-1362 (RPK) (JRC), 2024 WL 4224046, at *14 (E.D.N.Y. Sept. 18, 2024) (citing 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1497 (3d ed. 2024)). "The relation-back doctrine has its strongest application where amendments 'merely correct technical deficiencies.'" *Id.*

The requirements of Federal Rule 15(c) have not been met here. The Counterclaims were not filed as an amendment to correct "technical deficiencies" of prior pleadings filed by Parmar Entities. While all Parmar Entities were original defendants and responding defendants of the First Answer, only two of the Parmar Entities were crossclaim plaintiffs. Counterclaims p. 26. Parmar Entities fail to address how the Counterclaims asserted by fifteen additional defendants relates back to the First Answer Crossclaims asserted by only two of the Parmar Entities when all fifteen Parmar Entities were also parties to this Adversary Proceeding at that time, or how Corporate Plaintiffs would have been provided sufficient notice that these Counterclaims were going to be litigated as part of this Adversary Proceeding.

Further, the facts of the First Answer Crossclaims were insufficient to have given rise to a claim of either fraud in the inducement/fraudulent misrepresentation or breach of fiduciary duty. The factual background of the First Answer Crossclaims includes 61 paragraphs of factual

allegations, whereas the Counterclaims set forth 270 paragraphs of factual allegations exclusive of the paragraphs that plead the causes of action of the Counterclaims. First Answer Crossclaims ¶¶ 230-291; Counterclaims ¶¶ 19-289, 291-296, 298-303.

Many (if not all) of the factual allegations needed for Parmar Entities to rely on in support of the Counterclaim for fraud in inducement/fraudulent misrepresentation are missing from the First Answer Crossclaims. The First Answer Crossclaims does not even contain the words "inducement," "false representation," "material omission," or "misrepresentation" as part of any factual allegations, and there are no allegations of the crossclaim plaintiffs "justifiable reliance" on any alleged material misrepresentations or omissions of Corporate Plaintiffs. Such factual allegations only appeared for the first time in the Counterclaims.

Additionally, many (if not all) of the factual allegations which Parmar Entities would rely on in support of the breach of fiduciary duty Counterclaim are not contained in the First Answer Crossclaims. There were no specifically pled factual allegations in the First Answer Crossclaims which reference that corporate fiduciary duties were even owed, let alone violated, by Corporate Plaintiffs. Such factual allegations only appear for the first time in the Counterclaims.

Moreover, there are numerous inconsistencies between the facts of the First Answer Crossclaims and the Counterclaims. *Compare* First Answer Crossclaims ¶ 263 (referring to a new offer to purchase CHT which was submitted by Chu in or about July 2016) *with* Counterclaims ¶ 167 (alleging that Chu submitted a new offer to purchase CHT on September 14, 2016); *compare* First Answer Crossclaims ¶ 265 ("The impact of the repayment of the loan and the acquisitions would have increased the minimum fair price of CHT from D&P's estimate of $500 million to $553 million. However, CC Capital's offer was in the $275 million range. This disparity caused significant debate among the CHT Board.") *with* Counterclaims ¶ 168 ("The impact of the

18

repayment of the loan and the acquisition should have increased the minimum fair price of CHT from D&P's estimated range of $500 million to $650 million. However, CC Capital's offer was in the $250 million range. This disparity caused significant debate among CHT's board members."); *compare* First Answer Crossclaim ¶ 274 ("Undeterred, Chinh Chu made several further attempts to push the CC Capital deal through. CC Capital first offered the shareholders 7-year promissory notes for an additional $40 million, which would effectively raise the purchase price to $315 million, still forty-five (45%) percent below the D&P valuation and substantially below D&P's fairness mark.") *with* Counterclaims ¶ 182 ("Undeterred, Chu made several further attempts to push the deal through. He first offered the CHT shareholders 7-year unsecured promissory notes for $40 million, which would effectively raise the purchase price to $309 million, still well below the D&P valuation.").

On July 12, 2023, Parmar even admitted the "many factual inaccuracies" contained in the First Answer and the First Answer Crossclaims. Affidavit in Opposition to Motion for Default Judgment ("Parmar Affd.") [dkt. item 506] ¶¶ 6,7. Parmar admits that his concerns with inaccurate filings arose in mid-2020 and again in June 2022. *Id.* ¶ 9. Indeed, Parmar admits in January 2020, he "learned of the failures of [former counsel] regarding the claims". *Id.* ¶ 14. In January 2020, the statute of limitations had not yet run for Parmar Entities to timely assert either of the Counterclaims. Yet, Parmar Entities did not seek to amend any of their pleadings previously filed with the Court to correct knowingly erroneous factual representations or add missing causes of action.

To allow Parmar Entities to now assert the untimely Counterclaims runs contrary to the purpose of Federal Rule 15(c) and would greatly prejudice Corporate Plaintiffs.

Corporate Plaintiffs would be further prejudiced by the Counterclaims being asserted

almost six years into the case, five-and-a-half years after the First Answer Crossclaims were filed and five years after those crossclaims were voluntarily dismissed. "As a general rule, the risk of substantial prejudice increases with the passage of time." *GEOMC Co., Ltd. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 100—01 (2d Cir. 2019). This complex, multiparty case is set for trial September 30, 2025, and discovery will end May 28, 2025.

Because the Counterclaims do not relate back to the First Answer Crossclaims, they have not been plead within the appropriate statutes of limitations. Thus, the Counterclaims are also dismissed because they are now barred by statute of limitations.

The Court need not address the other grounds for dismissal set forth in the Motion.

## **CONCLUSION**

Accordingly, for the reasons set forth herein, it is hereby

**ORDERED**, that the Motion is granted; and it is further

**ORDERED**, that the Counterclaims are dismissed with prejudice.



Dated: December 6, 2024
Central Islip, New York

_____
Alan S. Trust
Chief United States Bankruptcy Judge